17 A.3d 271 (2011)
419 N.J. Super. 439
Theresa MEIER, as Administratrix Ad Prosequendum of the Estate of Ralph Ciccone, and Theresa Meier, Individually, Plaintiff-Appellant,
v.
Pasquale D'AMBOSE,[1] Defendant-Respondent.
No. A-2555-09T1.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 2010.
Decided April 28, 2011.
*272 David P. Affinito, Orange, argued the cause for appellant (Dell'Italia Affinito & Santola, attorneys; Mr. Affinito, on the brief).
Edward L. Thornton argued the cause for respondent (Methfessel and Werbel, attorneys; Mr. Thornton, of counsel and on the brief; Amanda J. Schmesser, Edison, on the brief).
Before Judges FUENTES, GILROY and ASHRAFI.
The opinion of the court was delivered by
ASHRAFI, J.A.D.
Plaintiff Theresa Meier, individually and as the representative of the estate of her brother, Ralph Ciccone, appeals from an order of the Law Division dismissing by summary judgment her negligence and wrongful death complaint. The issue presented is whether the owner-landlord of a single-family residence had a duty to the tenant to maintain, and thus periodically inspect, the furnace to prevent a hazardous condition. We hold that he did and therefore reverse the Law Division's order and remand the matter for trial.
Ralph Ciccone died of smoke inhalation from a fire on December 10, 2006, at the house he was renting from defendant Pasquale D'Ambose. Viewed most favorably to plaintiff, see R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), the evidence presented in defendant's summary judgment motion revealed the following facts.
Defendant was the owner of a single-family house in Neptune City, which he purchased in 1998 for investment purposes. At the time of the fire, the house had the same furnace that was in place when defendant purchased the property. *273 During the intervening eight years, defendant never had the furnace inspected and only arranged for its repair on one occasion.
Two different tenants occupied the property before Ciccone. In December 2003, defendant and Ciccone executed a written lease for use and occupancy of the entire premises. At the time that Ciccone first began his tenancy, defendant had the property inspected by the municipality and received a certificate of occupancy.
The lease required Ciccone to "take good care of the House and all equipment and fixtures in it" and specifically, to "keep the furnace clean." The furnace was located in a crawl space under the floor in front of the bathroom entrance and could be seen through an open grate. Defendant testified at deposition that one could keep the furnace clean by "removing the grate and vacuuming, maybe"; there was no need to go down into the crawl space. A hatch cover in the kitchen and steps leading down provided access to the crawl space and the furnace. Defendant had only been in the crawl space one time.
The lease required defendant, as the landlord, to "make any necessary repairs and replacements to the vital facilities serving the House within a reasonable time after notice by the Tenant." Furthermore, the lease granted defendant "access to the House on reasonable notice to the Tenant" to "inspect the House" and to "make necessary repairs, alterations, or improvements." Defendant conceded at deposition that, under the terms of the lease, it was his responsibility rather than Ciccone's to repair the furnace.
On one occasion during the tenancy, approximately one year before the fire, Ciccone complained that the home did not have heat. In response, defendant hired a person by the name of Charlie to check the furnace. Defendant recalled Charlie coming to the house one time, and replacing a thermal coupling on the furnace, which was located "on the bottom of the furnace in the crawl space" and could not be accessed by taking off the grate cover. Defendant could not recall Charlie coming to the home on any other occasion to inspect or repair the furnace. In addition, he did not have a service contract with any company for routine maintenance or inspection of the furnace.
On the morning of December 10, 2006, a neighbor called 911 and emergency responders were dispatched to the house. Ciccone was removed from the house and transported to a hospital, where he was pronounced dead in the emergency room. Following an autopsy, the Monmouth County Medical Examiner listed the cause of death as "smoke inhalation due to a house fire."
The Monmouth County Fire Marshall's Office indicated in a written report that the fire was "considered accidental in nature." The report concluded that "the fire origin was located in the crawl space, center of the hallway" and that "[a] malfunction of the natural gas fired furnace could not be ruled out as to the possible cause of this fire."
Plaintiff subsequently engaged an independent company, Fire and Risk Engineering, to investigate and analyze the fire. In a written report, professional engineer Robert Malanga concluded that "[t]he Fire was caused by improper operation of the Floor Furnace; specifically, as due to the continued existence of a severely deteriorated Flue Connector." This flue pipe connected the exhaust outlet for the furnace to an exterior chimney. In explaining how the deterioration of the pipe led to the fire, Malanga's report stated:
[t]he severe and thorough degradation, and thus, absolute loss of integrity *274 of the Flue Connector, resulted in inadequate draft, which precluded the Appliance from operating properly, efficiently or otherwise within the limitations of the Approval listing. In addition, this condition caused exhaust gases and products of combustion to be released into the Crawl Space immediately below the Residence.
Such improper and unsafe operating conditions also led to the emergence of a hostile flame, i.e., that would have extended outside of the combustion chamber, thereby exposing vulnerable components and the unprotected combustible construction within the Crawl Space.
Furthermore, Malanga concluded:
The advance deteriorated condition of the Flue Connector is clearly indicative of a failure to properly inspect, maintain, or otherwise service the Appliance. . . . Even the most fleeting degree of visual inspection of the Floor Furnace and Flue Connector would have revealed the developing long-term degradation and attendant hostile flame conditions, as well as any ensuing, cumulative damage to the exposed combustible construction.
On this record, the Law Division granted summary judgment to defendant, concluding that defendant had not breached any duty owed to Ciccone.
On appeal, our standard of review from a granting of summary judgment is plenary. Because we review the same record as the trial court, we must determine for ourselves, without deference to the trial court's ruling, whether disputed issues of fact exist for determination by a jury. See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, supra, 142 N.J. at 540, 666 A.2d 146.
A common law cause of action for negligence has four elements: (1) a duty of care owed to plaintiff by defendant, (2) a breach of that duty by defendant, (3) proximate cause, and (4) actual damages. Brunson v. Affinity Fed. Cred. Union, 199 N.J. 381, 400, 972 A.2d 1112 (2009). The plaintiff bears the burden of proving each of these elements. Ibid.
In the negligence context, "a duty is an obligation imposed by law requiring one party to conform to a particular standard of conduct toward another." Acuna v. Turkish, 192 N.J. 399, 413, 930 A.2d 416 (2007), cert. denied, ___ U.S. ___, 129 S.Ct. 44, 172 L.Ed.2d 22 (2008). Whether a duty of care exists with respect to a particular plaintiff "is generally a matter for a court to decide." Ibid.
In Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 625 A.2d 1110 (1993), the Court discussed the common law history of a landowner's duty to prevent a hazardous condition or to warn those on the land. For many years, the common law focused on property rights and determined the scope of a landowner's duties according to the status of the injured person as a business invitee, a social guest, or a trespasser. Id. at 433-34, 625 A.2d 1110. More recent development of the law, however, has approached the question more flexibly and with fact-sensitive consideration of public policy and fairness. Id. at 435-41, 625 A.2d 1110. To determine whether the owner of property had a duty in particular circumstances to the injured person, a court must examine such factors as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise *275 care, and the public interest in the proposed solution." Id. at 439, 625 A.2d 1110; accord Acuna, supra, 192 N.J. at 414, 930 A.2d 416; Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 573, 675 A.2d 209 (1996).
In this case, the trial court reasoned that defendant had satisfied any duty of care owed to Ciccone by having the municipality inspect the property at the beginning of the tenancy, and by hiring a repairman to fix the furnace in response to the only complaint by Ciccone involving the furnace. The court characterized the deteriorated flue pipe as a "latent defect" for which defendant was not responsible because he had no notice of the defective condition. Relying on Patton v. Texas Co., 13 N.J.Super. 42, 80 A.2d 231 (App.Div.), certif. denied, 7 N.J. 348, 81 A.2d 522 (1951), and Szeles v. Vena, 321 N.J.Super. 601, 729 A.2d 1064 (App.Div.), certif. denied, 162 N.J. 129, 741 A.2d 97 (1999), the trial court held as a matter of law that defendant did not have a duty to make periodic inspections of the furnace to discover any such defects because Ciccone was in sole possession of the premises. The relevant factors and case law lead us to a different conclusion.
In Patton, supra, 13 N.J.Super. at 44, 80 A.2d 231, the plaintiff, a guest in a leased dwelling, was injured as he was descending the concrete steps leading from the home to the sidewalk when his foot "gave" because of a faulty step. According to the tenants, the landlord had previously refused their request to repair the step. After a favorable verdict for the plaintiff at trial, id. at 44, 80 A.2d 231, this court reversed and granted judgment for the landlord, reasoning that the parties contemplated "the letting of the entire property, that is, the lot and the house, which included the front steps." Id. at 45, 80 A.2d 231. Because the landlord had not contracted to repair the steps, it had no duty to do so. Id. at 45-46, 80 A.2d 231.
Similarly, in Szeles, supra, 321 N.J.Super. at 602, 729 A.2d 1064, the plaintiff-tenant sustained injuries as a result of a fall on an exterior staircase where a brick had come loose. Before the accident, plaintiff had not noticed the loose brick, and he had not requested that the landlord repair the steps. Id. at 603-04, 729 A.2d 1064. Relying on Patton, the trial court granted the defendant-landlord's motion for summary judgment, id. at 604-05, 729 A.2d 1064, and we affirmed. We held that "where plaintiff was in exclusive possession of the premises and the condition of the brick step was not a condition that was known to the landlord at the inception of the lease, or brought to the landlord's attention, there is no basis to impose tort liability on the defendant." Id. at 608, 729 A.2d 1064.
More recently, however, in Reyes v. Egner, 404 N.J.Super. 433, 448-55, 962 A.2d 542 (App.Div.2009), aff'd by equally divided court on other grounds, 201 N.J. 417, 991 A.2d 216 (2010), we considered whether the owner of a rented vacation house had a duty to short-term renters and their guests to discover and remedy a dangerous condition of an elevated deck and stairs from which the plaintiff had fallen. Because the rental was of short duration, we declined to apply the holdings of Patton and Szeles. Id. at 456, 962 A.2d 542. We held that the law has developed so that the landowner's duties in such circumstances "should be defined consistent with the precepts of Section 358" of the Restatement (Second) of Torts (1965). Ibid.
In relevant part, that Restatement section states:
§ 358 Undisclosed Dangerous Conditions Known to Lessor
(1) A lessor of land who conceals or fails to disclose to his lessee any condition, *276 whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others . . . for physical harm caused by the condition after the lessee has taken possession, if
(a) the lessee does not know or have reason to know of the condition or the risk involved, and
(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.
[(Emphasis added).]
Thus, our decision in Reyes focused on whether the lessor and the lessee had "reason to know" of a condition that "involves unreasonable risk of physical harm." Reyes, supra, 404 N.J.Super. at 461-62, 962 A.2d 542.
The short term of the rental agreement was not the only rationale we discussed for imposing a duty upon the lessor in accordance with the provisions of § 358 of the Second Restatement. Also considered in our analysis was that the dangerous condition was a violation of construction codes. Reyes, supra, 404 N.J.Super. at 456-58, 962 A.2d 542. We stated that "such violations may be evidential if not conclusive of the lessors' potential breach of a duty . . . ." Id. at 458, 962 A.2d 542. See also Parks v. Rogers, 176 N.J. 491, 494, 496 n. 1, 825 A.2d 1128 (2003) (noting potential code violation in discussing homeowner's duty to warn unwary guest of dangerous condition of stair railing).
Similarly in this case, plaintiff alleges, with the support of an expert report, that fire code violations were a cause of the fire and resulting death. Under the State Fire Prevention Code, "[c]himneys, incinerators, smokestacks or similar devices for conveying smoke or hot gases to the outer air and the stoves, furnaces, fireboxes or boilers to which such devices are connected, shall be maintained so as not to create a fire hazard." N.J.A.C. 5:70-3.1, 603.6 (emphasis added). Moreover, "[e]xisting chimney and vent connectors that are damaged, corroded or improperly supported shall be repaired or replaced." N.J.A.C. 5:70-3.1, 603.6.5.[2]
Although we have not been directed to a provision of our State's current Fire Code that specifies the necessity of periodic inspections, plaintiff's expert states that annual inspections are customary and necessary to ensure safe operation of a furnace and thus to comply with the provisions of the Fire Code. We do not adopt or express an opinion about that standard on the record before us, but we agree that, without maintenance and inspection, a furnace and its constituent parts can "involve an unreasonable risk of physical harm to persons on the land." See Restatement (Second) of Torts § 358.
In Patton, supra, 13 N.J.Super. 42, 80 A.2d 231, and Szeles, supra, 321 N.J.Super. 601, 729 A.2d 1064, the question involved notice of and a duty to repair a faulty step. As reflected in the Fire Code, preventing a hazardous condition of a furnace goes beyond a duty to make repairs when the landowner is put on notice of a defective condition. Unlike steps, a furnace is operating equipment that can be a *277 fire hazard, and it requires periodic inspection and maintenance to ensure that it is in safe operating condition. The question in this case is who as between the landlord or the tenant had "reason to know of the [defective] condition"[3] of the furnace because he had a duty to conduct periodic inspections.
Applying the analysis and factors discussed in Hopkins, supra, 132 N.J. at 439, 625 A.2d 1110; Carvalho, supra, 143 N.J. at 573, 675 A.2d 209; and Acuna, supra, 192 N.J. at 413-14, 930 A.2d 416, we conclude that defendant lessor had a duty to maintain the furnace so that it was not dangerous to persons or property, and that such duty required periodic inspections to discover dangerous defects.
The relationship of the parties was defined by the lease. As previously stated, the lease required Ciccone to "[t]ake good care of the House and all equipment and fixtures in it" and to "[k]eep the furnace clean." Defendant conceded that cleaning the furnace did not even require entering the crawl space. On the other hand, defendant did not deny it was his obligation rather than Ciccone's to repair known defects of the furnace. The lease required that defendant "make any necessary repairs and replacements to the vital facilities serving the House within a reasonable time after notice by the Tenant." We note that when Ciccone detected a problem with lack of heat in the house, defendant took on the responsibility of hiring a repairman to fix the furnace. By the terms of the lease, defendant contracted to make any necessary repairs.
Furthermore, the lease retained for defendant the right of access to the property to "inspect the House [and] make necessary repairs." No similar language in the lease imposed a duty on the tenant to inspect and make necessary repairs. The language of the lease did not shift responsibility for inspection and maintenance of the furnace to the tenant.
As to the nature of the attendant risk, the catastrophic result in this case demonstrates the serious consequences that can result when a furnace is not maintained. Furthermore, not only can a defective furnace cause harm to the tenant and other occupiers of the property, it can potentially damage neighboring properties and harm strangers. The attendant risk of failing to maintain or inspect for dangerous defects is substantial and unacceptable.
As to the opportunity and ability to exercise care, and the public interest in imposing a duty upon the lessor, the Reporter's Note to § 356 of the Second Restatement, quoted in Reyes, supra, 404 N.J.Super. at 451, 962 A.2d 542, explains the policy behind development of the common law. In accordance with that commentary, a lessee of premises that might contain a hazardous furnace often may not have the financial resources or the incentive to maintain the furnace in good condition. That inability or disinclination is not necessarily limited to short-term or multi-family rentals. A longer-term lease of an entire house may be made to a family or a group of young adults, such as college students for example, with no inclination and limited means to maintain the premises beyond immediate necessity.
The lessor, on the other hand, has a non-delegable duty of care to third parties to avoid a hazardous condition of his property. See, e.g., Hopkins, supra, 132 N.J. at 441, 625 A.2d 1110. Whatever may be the terms of a lease and the duties of lessor and lessee as to each other, the lessor cannot by virtue of the lease release *278 himself from potential liability to third parties. In addition, the lessor benefits in the long-term from maintaining the property. He collects rent to fund maintenance of the property, and he should have the incentive and means to arrange inspections to prevent hazardous conditions.
Considering all these factors, it is appropriate to impose a duty upon the lessor to maintain and inspect the furnace. In the absence of a lease provision to the contrary, which might affect responsibility for maintaining the furnace and hence potential liability as between landlord and tenant, we hold that defendant landlord had a duty to the decedent to maintain the furnace and, thus, to inspect it periodically to ensure that it was in safe operating condition and not creating a fire hazard. Fulfillment of that duty did not require notice of a defect. In the language of Restatement (Second) of Torts § 358, that duty gave the landlord reason to know of a dangerous condition of the furnace in his property.
Furthermore, the summary judgment record did not establish that the municipal inspection at the inception of Ciccone's lease fulfilled defendant's duty to inspect the furnace periodically. There was no evidence regarding the scope of that inspection and whether it specifically included the operation and condition of the furnace. Moreover, the report prepared by plaintiff's expert stated that annual inspection and maintenance of a furnace is the "accepted industry practice for residential home heating plants." A municipal inspection three years before the fire to obtain a certificate of occupancy did not satisfy the landlord's duty.
Having failed to inspect the furnace in the eight years of his ownership of the property, defendant was not entitled to summary judgment dismissing plaintiff's claim of negligence.
Reversed and remanded for trial.
NOTES
[1] Pasquale D'Ambose was improperly pleaded as Pasquale D'Ambruse.
[2] N.J.A.C. 5:70-3.1 provides that, subject to certain modifications, the model code of the International Code Council (ICC), known as the "2006 International Fire Code," is adopted by reference as the State Fire Prevention Code for New Jersey. The New Jersey edition of the code is available online through the ICC's website at http://www2.iccsafe.org/states/06NewJerseyFire/Fire_Code/NJ_Fire_Frameset.html (last visited Apr. 20, 2011).
[3] Restatement (Second) of Torts § 358.