NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5094-15T3

SABRINA L. REAVES-HARRINGTON
and DEDRIA A. DOUGANS,

 Plaintiffs-Appellants,

 v.

THOMAS D. DIGUISEPPI,

 Defendant-Respondent.
__________________________________________________

 Argued October 3, 2017 – Decided November 6, 2017

 Before Judges Fisher and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cumberland County,
 Docket No. L-0333-14.

 Devesh Taskar argued the cause for appellants
 (Law Offices of Robert I. Segal, attorneys;
 Maria DeTitto, on the brief).

 Deborah C. Halpern argued the cause for
 respondent (Parker Young & Antinoff,
 attorneys; Ms. Halpern, on the brief).

PER CURIAM

 On the Fourth of July 2013, plaintiffs Sabrina L. Reaves-

Harrington and Dedria A. Dougans sat on the porch of the Bridgeton

home Dedria leased from defendant Thomas DiGuiseppi when a
triangular wooden piece (referred to in depositions as a scroll),

which was fixed to both a supporting pole and the porch roof,

became dislodged, fell, and struck Sabrina.1 Later, after Sabrina

was taken to a hospital, a wooden pole extending from the porch

to the underside of the porch roof (to which the scroll had been

attached) fell and struck Dedria. Because Dedria's long-term lease2

imposed no obligation on Thomas to inspect, maintain or repair,3

and because Thomas did not know or have reason to know of any

problems with the pieces of the porch that dislodged, we affirm

the summary judgment dismissing Dedria and Sabrina's suit.

1
 We have appended a photograph, which was identified at Thomas's
deposition, depicting the porch's appearance shortly after the
July Fourth incident. The pole that fell and allegedly struck
Dedria was drawn in by Thomas at the deposition; it appears to the
right of the stairs that lead from ground level to the porch.
Thomas also circled on the photograph what he referred to as a
scroll.
2
 She had leased the property since May 2011.
3
 In his deposition, Thomas acknowledged he had made repairs to
the property in the past when a problem manifested. The contract,
however, does not expressly impose such a duty. And, despite
plaintiffs' argument to the contrary, the contract does not
preclude the tenant from maintaining or repairing the property
should the tenant observe a problem. The lease only prohibits the
tenant from "mak[ing] or suffer[ing] any alterations" to the
premises; this provision was uttered in the same sentence that
barred the tenant from using the property for "any . . . purpose
other than as a private dwelling" and should be interpreted in
that sense and not as a bar on the tenant's rights to make repairs
or maintain the property.

 2 A-5094-15T3
 The facts are undisputed, and the case poses a simple

question: whether the common law imposed a duty on Thomas, the

landlord, to inspect the leased property for latent defects. Or,

as the question is put by plaintiffs: does the doctrine of res

ipsa loquitur apply and impose liability on a landlord in these

circumstances? Much has been written on this subject that we need

not reiterate beyond providing for the reader a brief outline of

the current state of a landlord's common-law duties.

 Despite plaintiffs' forceful arguments, the doctrine of res

ipsa loquitur has no application here. Justice Brennan, when he

sat in this court, wrote in Patton v. The Texas Co., 13 N.J. Super.

42, 47 (App. Div.), certif. denied, 7 N.J. 348 (1951), that a

landlord, who had leased a home and lot and had not contracted to

repair or maintain, was entitled to the reversal of a plaintiff's

verdict because the common law imposed on landlords no duty to

remedy a property defect absent a "fraudulent concealment of a

latent defect." We later recognized in Szeles v. Vena, 321 N.J.

Super. 601, 606 (App. Div. 1999), that Patton is consistent with

Restatement (Second) of Torts § 355 (1965), which declares that

"a lessor of land is not subject to liability for bodily harm

caused to [a] lessee or others upon the land . . . by any dangerous

condition which comes into existence after the lessee has taken

possession." The Second Restatement recognizes exceptions to this

 3 A-5094-15T3
general rule that have no arguable application here, e.g.: where

the lessor contracts to repair, id., § 357; where the property is

leased for purposes involving public admission, id., § 359; where

parts of the land are controlled by the lessor, although the lessee

is entitled to their use, id., § 360; and where the lessor has

been negligent in making repairs, id., § 362. See Szeles, supra,

321 N.J. Super. at 606.4

 The only exception to the Second Restatement's general rule

that we need to consider is that which imposes liability when a

landlord "knows or has reason to know" of the condition, "realizes

or should realize the risk involved," and "has reason to expect

that the lessee will not discover the condition or realize the

risk." Restatement (Second), supra, § 358(1)(b). These elements

of the exception, however, have not been demonstrated here.

 There is no dispute that no one – neither Thomas nor Dedria

– was aware the pole or the scroll or both were in disrepair or

on the verge of becoming displaced. The only question, then, is

4
 The implied covenant of habitability recognized in Marini v.
Ireland, 56 N.J. 130, 144 (1970), does not expand a landlord's
obligations in this circumstance. Szeles, supra, 321 N.J. Super.
at 607. That common-law concept, as well as others found in the
Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.2, relate to the
tenancy itself and not to claims asserted by persons injured by a
dangerous condition in the premises. See Dwyer v. Skyline Apts.,
Inc., 123 N.J. Super. 48, 55 (App. Div.), aff'd o.b., 63 N.J. 577
(1973).

 4 A-5094-15T3
whether Thomas had reason to know of such a possibility.5 The

record is barren of any evidence to support such a contention and

the absence of any such evidence required entry of summary judgment

in Thomas's favor. We thus find insufficient merit in plaintiffs'

arguments to warrant further discussion in this opinion, R. 2:11-

3(e)(1)(E), except to add that we are mindful of our more recent

decisions in Meier v. D'Ambose, 419 N.J. Super. 439 (App. Div.),

certif. denied, 208 N.J. 370 (2011), and Reyes v. Egner, 404 N.J.

Super. 433 (App. Div. 2009), aff'd by a divided court on other

grounds, 201 N.J. 417 (2010), and are aware a superficial reading

of those decisions might suggest a different outcome.

 In Meier, the panel concluded that a defendant-landlord was

not entitled to summary judgment where the plaintiff-tenant died

from smoke inhalation caused by the property's faulty furnace.

This decision, however, does not compel the same result here. The

Meier panel observed that administrative regulations regarding

chimneys, smokestacks, and other similar furnace components,

imposed on the landlord an independent duty to inspect the furnace,

419 N.J. Super. at 447-48, which he disregarded for the eight

years preceding entry into his lease with the decedent, id. at

451. The panel recognized that if the landlord complied with this

5
 We assume for present purposes that neither plaintiff actively
dislodged the pole or scroll.

 5 A-5094-15T3
independent duty he would likely have discovered the dangerous

condition. Id. at 449-51. In short, Meier represents an example

of when a tenant has sufficiently presented a triable issue about

whether a landlord had reason to know of a dangerous condition.

And Meier is distinguishable because that landlord's claim of lack

of knowledge was arguably unjustified (or could be rejected by a

jury) because of the landlord's affirmative duty – imposed not by

common law or contract but by regulation – to inspect the furnace.

 Reyes is also distinguishable. Although suggesting "inroads"

have been made, 404 N.J. Super. at 454, toward the rejection of

Patton's "fraudulent concealment" requirement – an observation

with which we agree6 – Reyes otherwise distinguished our earlier

holdings in reversing the defendant-landlord's summary judgment

because the lease was a short-term, two-week rental, a circumstance

the panel found "fundamentally different from the multi-year

tenancies" in the other cases, Reyes, supra, 404 N.J. Super. at

455.

 In adhering to our well-established, common-law principles

that bar the imposition of liability on a landlord in this

6
 In other words, Patton's express holding seems to require that
a plaintiff show the landlord "fraudulently concealed" a defect.
Reyes suggests, and we agree, that adherence to the Second
Restatement has likely rendered unnecessary proof in a case like
this that a landlord "fraudulently" kept knowledge of a defect
from a tenant.

 6 A-5094-15T3
circumstance absent proof the landlord knew or should have known

of the alleged dangerous condition, we affirm the summary judgment

entered here in Thomas's favor.

 Affirmed.

 7 A-5094-15T3
8 A-5094-15T3