**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1419-22

THE ESTATE OF SEAN KING
and LISA KING, individually,
and as Administratrix Ad
Prosequendum on behalf of the
ESTATE OF SEAN KING,

     Plaintiffs-Appellants,

v.

HIGH GRADE BEVERAGE, INC.,
and HGB REALTY 2, LLC,

     Defendants-Respondents,

and

ANTHONY DEMARCO, DENISE
DEMARCO CRUTCHLEY,
DIANA BATTAGLIA, JOSEPH
HGB REALTY, LLC, ELIZABETH
HGB REALTY, LLC, JOSEPH A.
DEMARCO, and ELIZABETH
DEMARCO,

     Defendants.

_____

Argued September 12, 2024 – Decided October 4, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2048-19.

Matthew R. Parker argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; James A. Kassis, of counsel; Matthew R. Parker, on the briefs).

Joseph M. Gaul, Jr., argued the cause for respondent HGB Realty 2, LLC (Gaul, Baratta & Rosello, LLC, attorneys; Joseph M. Gaul, Jr., of counsel and on the brief).

PER CURIAM

In this wrongful death action, plaintiffs, the Estate of Sean King and Lisa King, individually and as Administratrix Ad Prosequendum on behalf of the Estate of Sean King, challenge the court's December 1, 2022 order granting summary judgment and dismissing their claims against defendant HGB Realty 2, LLC. For the reasons that follow, we affirm.

I.

We begin by reviewing the facts in the motion record, considering them in a light most favorable to plaintiffs, the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In November 2017, decedent Sean King was employed by HGB as a maintenance worker when he received a

fatal electric shock while attempting to replace a wall-mounted 277-volt emergency light fixture in anticipation of a fire inspection. The matter was referred to the Occupational Safety and Health Administration (OSHA) for investigation. OSHA determined decedent was working with "live" wires when he was electrocuted as the circuit breaker feeding the emergency light fixture had not been turned off.

In 2011, Joseph HGB Realty, LLC and Elizabeth HGB Realty, LLC, leased property located at 86 Canfield Avenue in Randolph (the Property) to High Grade Beverage (HGB). The Property "consists of a one-story, masonry, cold storage industrial complex comprised of approximately 72,600 square feet of warehouse, office and garage space . . . and the land consisting of approximately 15.91 acres . . . ." HGB acknowledged "it ha[d] inspected [the Property] and [was] fully familiar with its condition and is leasing the same in 'AS IS' condition."

The lease specified, "the [b]asic [r]ent payable by the [t]enant . . . is intended to be 'triple net' . . . and all other charges and expenses imposed upon the [l]eased [p]remises or incurred in connection with it[] . . . shall be paid by the [t]enant . . . ." Section 9.01 of the lease provided, in part: "The [t]enant

shall keep the [l]eased [p]remises, including but not limited to, . . . electrical, . . . in good condition and repair . . . ."

According to defendant, Joseph and Elizabeth DeMarco, the individuals involved with Joseph HGB Realty, LLC and Elizabeth HGB Realty, LLC, "determined it was appropriate to change the corporate structure of the landlords from the 'Joseph' and 'Elizabeth' entities identified in the 2011 lease to this defendant," HGB Realty 2, LLC. As such, in 2016, defendant HGB Realty 2 was the entity that leased Property to HGB.

The 2016 lease concerned the same Property as the 2011 lease, was similarly "intended to be 'triple net,'" and stated, "all other charges and expenses imposed upon the [l]eased [p]remises or incurred in connection with its use, occupancy, care, maintenance, operation and control . . . shall be paid by the [t]enant . . . ." Additionally, Section 9.01 of the 2016 lease comparably provided, in part: "The [t]enant shall keep the [l]eased [p]remises, including but not limited to, . . . electrical, . . . in good condition and repair . . . ." In his deposition, the Chief Financial Officer of HGB Realty 2, Jeffery Epstein, stated there were no circumstances in which the tenant, HGB, was required to obtain approval from HGB Realty 2, as landlord, to perform maintenance on the Property.

4

Perry Morris, an HGB employee for approximately thirty-one years, was the maintenance crew chief in July 2017. Morris was not a licensed electrician but did take a course in household wiring. While employed by HGB, Morris and his predecessor performed maintenance such as changing ballasts, repairing or replacing light fixtures, replacing a junction box, and "chang[ing] out a few breakers."

Prior to his retirement, Morris trained decedent for approximately two weeks in July 2017. Morris testified he showed decedent "the use of a tic trace or volt sensor and how to test batteries and continuity for a break in the line." Additionally, Morris stated there were two or three electrical panels at the Property, and when the building was first built, "there were three electrical contractors" who "didn't know what each of them w[ere] doing," resulting in circuit breaker panel labels that "weren't done right the first time."[1] Morris and another employee attempted to correct the labels "to the best of [their] ability" through "trial and error," and stated they were, "[f]or the most part," successful.

During his deposition, Morris was presented with a photograph of the circuit breaker label and stated he could not read the description of line thirty-

---

[1] Based on this testimony, plaintiffs contend, and the court accepted for purposes of summary judgment, that the circuit breaker box issues predated the 2016 lease.

A-1419-22

six, the circuit identified as feeding the emergency light the decedent was working on when he was electrocuted. Testifying to the best of his recollection, Morris proceeded to explain the description on line thirty-six read "[s]omething like emergency light trailer dock . . . ." He further explained the breaker "also controlled a light in [another] office." Morris then testified the label on line thirty-six is legible in person, and he further recalled showing decedent which switch controlled which circuit breaker by "point[ing] to the card written on the door and then to the corresponding circuit breakers."

Plaintiff's engineer expert, Les Winter, P.E., issued a report in which he opined, within a reasonable degree of engineering certainty, the decedent's electrocution was caused by decedent's lack of training as an electrician and the "panelboard directory [being] non-compliant and unreliable." With respect to the panelboard, citing Morris' deposition testimony and photographs of the electrical panel, Winter opined line thirty-six on the panelboard directory was not "legibly identified" or "legibly marked" in violation of Section 408.4(A) and Section 110.22 of the National Electrical Code. Winter also noted, because "the fixture in question was not functioning and therefore not illuminated," decedent could not, through "trial and error testing, by turning off and on random circuit breakers," determine whether the fixture was deenergized.

6

Following discovery, defendant HGB Realty 2 moved for summary judgment. After considering the parties' written submissions and oral arguments, the court granted defendant's motion, explained its reasoning in an oral opinion, and issued a conforming order that same day.

The court found that viewing the testimony and evidence in the light most favorable to plaintiffs, at some point prior to the retirement of Morris' predecessor, HGB's employees "knew about the electrical panel at issue, knew that line [thirty-six] was the breaker that controlled the emergency light at issue, . . . and that they determined what the circuit breaker referenced on line [thirty-six] controlled via trial and error," and subsequently labeled the breaker properly such that "you could read what was written on line [thirty-six]." The court also noted Morris "showed decedent the panel box and . . . he showed decedent which switch controlled which circuit breaker by pointing to the card written on the door and corresponding circuit breakers."

The court then found at the time HGB Realty 2 leased "exclusive control" of the Property to HGB, "the tenant defendant HGB knew of the condition or had reason to know of the condition prior to decedent's accident, and [d]efendant HGB had the opportunity and indeed attempted to remedy the condition prior to the accident at issue." The court, relying on Reyes v. Egner, 404 N.J. Super.

7

433, 448-56 (App. Div. 2009), and section 358 of the <u>Restatement (Second) of Torts</u>, concluded HGB Realty 2 could not "be held liable for the alleged defective condition that predated the time of the lease because the tenant . . . if not had knowledge and tried to do something about it, certainly the testimony is undisputed that they were aware of the condition of the electrical panel box . . . ." This appeal followed.[2]

II.

In the first point before us, plaintiffs argue the court erred by relying on inapt case law and disregarding disputed issues of material fact. Specifically, relying on <u>Geringer v. Hartz Mountain Development Corp.</u>, 388 N.J. Super. 392, 403-05 (App. Div. 2006), they contend the "protections afforded by triple net leases to landlords are not absolute" when a dangerous defect predates the inception of the lease.

Plaintiffs further claim the court erred in "rigidly" applying <u>Reyes</u> and Section 358 of the <u>Restatement (Second) of Torts</u> when granting defendant's motion for summary judgment merely because the tenant, HGB, had knowledge

---

[2] Plaintiffs also asserted intentional tort claims against decedent's employer, HGB. <u>See</u> <u>Laidlow v. Hariton Mach. Co., Inc.</u>, 170 N.J. 602 (2002). The court granted HGB summary judgment on those claims and plaintiffs have not challenged that decision.

8

of the allegedly defective electrical panel. Plaintiffs maintain, "[g]iven the high risk of fatal injury" the electrical panel posed, "simply looking to the knowledge that HGB had about this risk is not enough to vitiate a duty of care on the part of [defendant HGB Realty 2]." On this point, plaintiffs cite Meier v. D'Ambose, 419 N.J. Super. 439, 449 (App. Div. 2011), and assert the court should have analyzed HGB Realty 2's duty as set forth in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 436 (1993), rather than "strictly" applying Section 358.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill, 142 N.J. at 540); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

The first step in a negligence action is to determine whether the defendant owed a duty to the plaintiff. See Carvalho v. Toll Bros. & Devs., 278 N.J. Super. 451, 457 (App. Div. 1995), aff'd, 143 N.J. 565 (1996). Determining whether or not a duty exists is a question of law. Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991) (citation omitted).

At common law, a landlord was not responsible for injury caused by a dangerous condition after the lessee took possession of the property. Szeles v. Vena, 321 N.J. Super. 601, 605 (App. Div. 1999) (citing Restatement (Second) of Torts § 356 (Am. L. Inst. 1965)). Our courts modified the general rule such that in certain circumstances, liability can be imposed on a landlord for injuries resulting from a dangerous condition on leased premises. Ibid. (citing Restatement (Second) of Torts §§ 357-62). Specifically, the scope of a landlord's duty in landlord-tenant negligence cases has evolved so that it may no longer be necessary in all cases for a plaintiff to prove that the landlord actively concealed a dangerous condition. The critical inquiry remains, however, whether the lessee was aware of the dangerous condition that caused injury.

Our decision in Patton v. Texas Co. has long served as a benchmark for determining landlord liability in negligence actions brought by tenants. 13 N.J.

Super. 42 (App. Div. 1951). In that case, the plaintiff sued the defendant landlord for an injury sustained during a fall while walking down the front steps. Id. at 44. The tenant had asked the landlord to repair the step, but as the landlord was under no contractual obligation to do so, he refused. Id. at 44-45. We found that "[a]s the defect was not latent, the landlord [was] not liable in the circumstances of this case to the tenants' invitee for injuries suffered on the premises by reason of the defect." Id. at 46. As the Patton court explained:

> [U]pon the letting of a house and lot there is no implied warranty or condition that the premises are fit and suitable for the use to which the lessee proposes to devote them and the landlord is therefore under no liability for injuries sustained by the tenant or the tenant's invitee by reason of the ruinous condition of the demised premises unless there has been fraudulent concealment of a latent defect.
>
> [Id. at 47 (citation omitted).]

In Szeles, we considered whether the Patton court's holding remained good law in view of a series of rent abatement cases finding residential leases carry an implied warranty or covenant of habitability. 321 N.J. Super. at 603. The plaintiff in Szeles lived in the rented house for three years before injuring himself when he fell on a loose brick on an exterior staircase of the single-family residence. Id. at 602-03. We recognized that there had been "obvious inroads" to the Patton rule, "particularly involving multi-family dwellings," id. at 606,

11

but despite those inroads, we nevertheless applied the general rule of Patton and held that the landlord was not liable to the plaintiff, noting "[t]his was clearly not a concealed condition." Id. at 607.

More recently, in Reyes, the trial court granted the defendants' summary judgment motion after finding that the plaintiffs failed to prove that the lessors actively or fraudulently concealed the allegedly dangerous condition. 404 N.J. Super. at 438. Our court questioned the "fraudulent concealment" requirement expressed in Patton, noting that "we hesitate to continue to impose upon plaintiffs an inflexible doctrinal requirement of proving the lessor's 'fraudulent concealment' of a dangerous condition." Id. at 459.

We concluded the requirement inapposite in the particular circumstances of that case. Reyes involved the short-term rental of a summer beach house. Id. at 438-39. In Patton, however, the plaintiff had been living in the rented premises for a few years on a month-to-month lease. 13 N.J. Super. at 44. We thus distinguished Patton, and determined a tenant of a short-term lease likely has no interest in doing a thorough pre-occupation inspection. Reyes, 404 N.J. Super. at 456-57. On that basis, we concluded that the discovery record, viewed in a light most favorable to the plaintiffs, raised genuine issues as to whether a

12

vacationing lessee would have reasonably noticed the dangerous condition. Id. at 461.

Applying these principles to the facts and record before us, we are convinced the court correctly granted HGB Realty 2 summary judgment. As previously noted, HGB and HGB Realty 2 executed a triple net lease, a lease "in which a commercial tenant is responsible for 'maintaining the premises and for paying all utilities, taxes and other charges associated with the property.'" Geringer, 388 N.J. Super. at 400 n.2 (quoting N.J. Indus. Props. v. Y.C. & V.L., 100 N.J. 432, 434 (1985)). Consistent with the lease, HGB had exclusive use of the Property and section 9.01 of the 2016 lease delegated the responsibility to HGB to maintain and repair the Property, including the Property's electrical and lighting. In fact, HGB Realty 2's Chief Financial Officer testified there were no circumstances in which HGB required approval before completing any maintenance at the Property. We also note, HGB Realty 2 did not maintain an office at the Property, nor did it actively participate or oversee HGB's maintenance, consistent with the terms of the lease.

Further, we disagree with plaintiffs' argument that the court misapplied Section 358 of the Restatement (Second) of Torts. As noted, in Reyes, we criticized the fraudulent concealment analysis expressed in Patton, but did not

suggest a landlord is liable to a tenant for a dangerous condition of which the tenant had knowledge. 404 N.J. Super. at 459. Rather, we embraced Section 358 which expressly accounts for the lessee's knowledge of the condition and held a:

> [L]essors' duty should be defined consistent with the precepts of Section 358 of the Second Restatement. As we have noted, that provision permits liability, even in the absence of a lessor's concealment, if the plaintiff demonstrates that the lessor has failed to disclose a condition "which involves unreasonable risk of physical harm to persons on the land" if "(a) the lessee does not know or have reason to know of the condition or risk involved, and (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."
>
> [Id. at 456 (quoting Restatement (Second) of Torts § 358.)]

Here, Morris' deposition testimony makes clear HGB was aware of the condition of the electrical panel as he and another employee attempted to address the mislabeled circuits through trial and error. In fact, Morris testified they were "[f]or the most part" successful in correcting the mislabeled circuit breaker box. Morris further stated he took decedent to the circuit breaker box and showed him which switch controlled which circuit. These undisputed facts fully support the court's finding that "HGB knew of the condition or had reason to know of

14

the condition prior to [plaintiff]'s accident, and [d]efendant HGB had the opportunity and indeed attempted to remedy the condition prior to the accident at issue."

Geringer does not compel a contrary result. In that case, plaintiff was injured after falling on an interior stairway within an office building owned by defendant, and on a floor "leased in its entirety to plaintiff's employer." Geringer, 388 N.J. Super. at 394. We affirmed in part and remanded in part the trial court's order granting defendant summary judgment, concluding defendant did not owe plaintiff a duty with respect to the maintenance and repair of the stairway, but did owe plaintiff a duty with respect to the stairway's design and construction. Ibid.

With respect to our determination defendant did not owe plaintiff a duty to maintain and repair the stairway, we noted "the lease confer[red] that responsibility upon [the tenant]" and the tenant agreed to "undertake 'all repairs' arising out of, among other things, 'the performance or existence of the [t]enant's [w]ork or alterations.'" Id. at 400-01 (alteration in original). We also stated this conclusion "comport[ed] with the factors identified in Hopkins," id. at 401, and was consistent with McBride v. Port Auth. of N.Y. & N.J., 295 N.J. Super. 521 (App. Div. 1996), "in which we held that 'there is no landlord liability' for

personal injuries suffered by a commercial tenant's employee on the leased premises 'due to a lack of proper maintenance or repair, when the lease unquestionably places responsibility for such maintenance or repair solely upon the tenant.'" Geringer, 388 N.J. Super. at 401 (quoting McBride, 295 N.J. Super. at 522).

As noted, we reached a different conclusion as to plaintiff's allegation the stairway was defectively designed and built. Id. at 402. We detailed how the lease "inject[ed] [defendant] quite substantially in the design and construction of the leased space," ibid., and defendant "played an essential part in the design and construction process." Id. at 403. Therefore, we concluded, consistent with Hopkins, defendant owed plaintiff a duty with respect to how the stairway was built. Id. at 403-04.

The facts in Geringer bear no resemblance to those in the motion record. As explained, while we held in that case the defendant landlord could be liable for the design and construction of the staircase at issue, we concluded such liability could be imposed because the landlord "played an essential part in the design and construction process." Id. at 402. Here, however, there is nothing in the record suggesting HGB Realty 2 was involved in overseeing, approving,

or inspecting any aspect of the Property after the lease's inception, and certainly not the electrical box at issue.

As to plaintiffs' argument the court erred by "inflexibly" applying both Reyes and Section 358, and should have instead conducted a Hopkins analysis of plaintiffs' claims as in Meier, we similarly find this argument to be without merit. In Meier, we determined it was fair to impose liability on a landlord for failing to maintain a furnace because the landlord had the incentive and was in the best position to maintain permanent and potentially dangerous fixtures in the leased premises. 419 N.J. Super. at 450. We did not, however, disregard Section 358 of the Restatement (Second) of Torts in favor of a Hopkins analysis.

Instead, we noted Section 358, together with the principles in Hopkins, permitted a duty to be imposed on the lessor to maintain and inspect the furnace, and "[i]n the language of Restatement (Second) of Torts § 358, that duty gave the landlord reason to know of a dangerous condition of the furnace in his property." Ibid. Here, Section 358's exception to the general rule of non-liability is inapplicable because HGB and decedent were aware of the circuit breaker label's condition, contrary to the lessee in Meier. Furthermore, as will be addressed below, even if the court had conducted a Hopkins analysis, we are convinced summary judgment was appropriate.

Plaintiffs next argue an application of the <u>Hopkins</u> factors to this case compels a finding that HGB Realty 2 owed decedent a duty of care. As applied to the motion record, plaintiffs argue the danger posed by the defective electrical panel and when the defect arose weigh in favor of imposing a duty of care on HGB Realty 2. Plaintiffs assert the electrical panel "presented a clearly foreseeable risk of serious or even fatal injury," and "[a] reasonable landlord should have been able to easily foresee that an electrical panel box that was largely indecipherable and which did not comply with code would present a serious risk of electrocution . . . ." Further, plaintiffs contend HGB Realty 2 had the opportunity to correct the defect and resolve the "trial and error" process.

Relying again on <u>Geringer</u>, plaintiffs argue "a triple net lease is not a talisman that can be used to extinguish all claims of liability." Plaintiffs maintain imposing a duty of care on HGB Realty 2 "comports with precedent and is entirely fair." Plaintiffs note the defect in this case did not arise while HGB had exclusive use and control of the property, but rather existed prior to the inception of the 2016 lease.

Plaintiffs also argue "[o]verarching considerations of public policy support the finding of a duty of care in this matter." Relying on <u>J.H. v. R & M</u>

Tagliareni, LLC, 239 N.J. 198, 218 (2019), plaintiffs state, "a landlord is not permitted to disregard a potentially fatal and easily discoverable condition on the property, assign control of the property to a tenant, and then avoid any liability which arises from this discoverable defective condition." Plaintiffs contend when there is a code violation, the landlord "must be required to ameliorate this condition prior to assigning control of the property to the tenant," as an opposite policy "would encourage landlords to either remain obtuse to discoverable defects or disregard the need to repair such defects prior to transferring control of the property." With respect to HGB's knowledge of the defective circuit breaker box, plaintiffs argue that knowledge "does not change the determination that [HGB Realty 2] owed a duty of care, nor is it sufficient to offset the duty of care owed by [HGB Realty 2] in this matter."

In determining the extent of a defendant's duty of care, courts consider the foreseeability of the risk of injury, and then weigh and balance: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999) (citing Hopkins, 132 N.J. at 439). "Ultimately, all considerations must be balanced 'in a "principled" fashion, leading to a decision that both resolves the current case and allows the

19

public to anticipate when liability will attach to certain conduct.'" Coleman v. Martinez, 247 N.J. 319, 338 (2021) (quoting G.A.-H. v. K.G.G., 238 N.J. 401, 414 (2019)).

As noted, in Geringer, we concluded the defendant landlord did not owe the plaintiff, an employee of the tenant, a duty of care when the lease delegated maintenance responsibility to the tenant and the tenant had exclusive access to the occupied office building floor. 388 N.J. Super. at 400-02; see also Shields v. Ramslee Motors, 240 N.J. 479, 489-94 (holding that a commercial landowner may properly delegate to a tenant the legal duty to remove ice and snow from the leased property). We noted our determination "comport[ed] with the factors identified in Hopkins," primarily because of the tenant's exclusive use of the floor and the "carefully defined roles of the parties concerning repairs and maintenance . . . ." Id. at 401-02. Further, we found the defendant's "opportunity and ability to exercise reasonable care" during the tenant's occupancy was, "at best, limited." Id. at 402.

We are satisfied a balancing of the Hopkins factors does not support imposing a duty on defendants. With respect to the first factor, the relationship between the parties, defendant HGB Realty 2 had no direct relationship with the

A-1419-22

decedent, an employee of HGB, and its relationship with HGB was pursuant to the limiting conditions of the triple net lease.

As to the second factor, the nature of the attendant risk, "[t]his aspect of the inquiry focuses the Court on the issue of whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden of preventing the harm upon the defendant." Shields, 240 N.J. at 493 (quoting Davis v. Devereux Found., 209 N.J. 269, 296 (2012)). Here, HGB had exclusive access to and control of the Property, and, because HGB was aware of the condition of the circuit breaker panel, we are convinced it is not unfair to place the responsibility of correcting the circuit breaker panel labels on the party, here the commercial tenant, who has access to the panel on a day-to-day basis and is in the best position to make any necessary repairs as they control the Property consistent with the parties' relationship. See ibid.

The third factor, the opportunity and ability to exercise care, focuses on control. Id. at 494. In Shields, the Court held it would be "impractical" to require a landlord without control of a property to prevent harm caused by weather. Ibid. The Court noted, "[t]he landlord does not maintain a presence on the property and does not have access to information about the condition of the property. By contrast, the tenant kept tools for resolving the problem and

regularly did so." Ibid. Similarly, here, defendant did not have control of the Property or maintain a presence at the facility, nor have an obligation to maintain the premises or electrical panel consistent with the terms of the lease. Further, as noted, HGB was aware of the condition of the circuit breaker panels and indeed attempted to fix the issue.

With respect to the public interest factor, in Shields, the Court noted "[h]olding a landlord liable for snow and ice on demised property would not serve any public policy interest" because "[t]here is no concern that plaintiff is left without redress" as he could recover from the tenant. Ibid. Here, although the court granted summary judgment to HGB and dismissed plaintiffs intentional-tort-based claims, plaintiffs are not left without redress against HGB. Under these circumstances, and for the reasons stated, we apply the Brill standard and conclude the court correctly granted summary judgment in favor of HGB Realty 2.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiffs lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-1419-22