**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5600-15T4
               A-3093-16T4


SKYLINE RIDGE
DEVELOPERS, LLC,

     Plaintiff-Respondent,

v.

ROMAN AND CHRISTINA
CIKALO,

     Defendants-Appellants.

_____

ROMAN AND CHRISTINA
CIKALO,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

SKYLINE RIDGE
DEVELOPERS, LLC,

     Defendant-Respondent/
     Cross-Appellant,

and

CENROSE HILLTOP URBAN
RENEWAL, LLC,

      Defendant/Third-Party
      Plaintiff,

v.

SHARP MANAGEMENT LLC and
ENCON MECHANICAL
CORPORATION,

      Third-Party Defendants,

and

SHARP MANAGEMENT LLC,

      Fourth-Party Plaintiff,

v.

SAM PAUL CONTRACTING, INC.,

      Fourth-Party Defendants.
_____

      Argued January 10, 2019 – Decided May 14, 2019

      Before Judges O'Connor, Whipple and DeAlmeida.

      On appeal from Superior Court of New Jersey, Law
      Division, Union County, Docket No. LT-005062-13,
      and Essex County, Docket No. L-8489-13.

2

Michael G. Sinkevich, Jr., argued the cause for appellants/cross-respondents (Lieberman & Blecher, PC, attorneys; Stuart J. Lieberman, of counsel and on the briefs; Michael G. Sinkevich, Jr., on the briefs).

John R. Wenzke argued the cause for respondent/cross-appellant (Lasser Hochman, LLC, attorneys; John R. Wenzke, on the brief).

PER CURIAM

In these matters, calendared back-to-back and consolidated for purposes of this opinion, plaintiffs Roman and Christina Cikalo appeal from the following orders: a June 3, 2016 order denying their motion to file a second amended complaint to include counts of spoliation and fraudulent concealment of evidence; an October 24, 2016 motion awarding fees to counsel for defendant Skyline Ridge Developers, LLC (Skyline Ridge) related to an out-of-state deposition; a January 6, 2017 motion for summary judgment dismissing the Cikalos' personal injury and toxic tort claims; a March 6, 2017 motion for reconsideration of the motion for summary judgment; and a March 6, 2017 judgment in favor of Skyline Ridge. No. A-3093-16. They also appeal from a

A-5600-15T4

July 14, 2016 order denying their motion to vacate a consent judgment in a landlord-tenant case, No. A-5600-15.[1] We affirm all orders under review.

We discern the following facts and procedural history from the record in both matters. Skyline Ridge luxury apartments were built in or around 2009. On August 2, 2012, the Cikalos signed a one-year lease at Skyline Ridge.

The Cikalos allege shortly after moving to Skyline Ridge, they developed a panoply of asthmatic and flu-like symptoms caused by a mold infestation in their apartment. In January 2013, the Cikalos observed condensation on the inside of their apartment windows. Roman[2] allegedly reported the condensation to Skyline Ridge's maintenance employee, Manuel Gonzales, who told Roman to place towels under the windows. Gonzales did not enter or inspect the apartment. Gonzales denied this encounter took place, and Skyline Ridge has no record of Roman's alleged complaint.

The Cikalos saw several doctors in 2013. Their urine tests showed elevated levels of mycotoxins, which suggested mold exposure. One doctor

---

[1]  In the accompanying landlord-tenant case, Skyline Ridge was plaintiff and the Cikalos were defendants. For ease of reference and to avoid confusion throughout this opinion, we refer to the parties by name.

[2]  We use first names because Roman and Christina Cikalo share the same surname. We intend no disrespect by employing this informality.

ruled out the possibility their symptoms were related to past mold exposure. Others reported the presence of mold toxins.

The Cikalos hired Certified Mold Inspections, Inc. (CMI) to evaluate the presence and severity of mold in their apartment. On April 5, 2013, Corey Levy, a CMI representative, conducted surface and air testing in the den, master bedroom, and guest bathroom. In the guest bathroom, he observed a "microbial musty smell [which] permeated throughout the entire area" and found "extremely elevated spore counts of Aspergillus/Penicillium, Chaetomium and Stachybotrys." In the master bedroom, Levy noted "visible signs [of] water intrusion and water staining observed around window" and "visible mold growth observed around window." An air sample "detected elevated level of mold spore counts of Stachybotrys" and the surface sample "detected mold growth of Chaetomium, Cladosporium and Scopulariopsis."

The Cikalos left their apartment on April 9, 2013. On April 12, 2013, they delivered a copy of Levy's report to Eugene Kouzma, Skyline Ridge's property manager. Kouzma inspected the Cikalos' unit on April 30, 2013, with a representative from Remediation Specialists, Inc. (RSI). RSI recommended remediation of the apartment that included placing the guest bathroom, den, and master bedroom "under [n]egative [a]ir pressure utilizing [high efficiency

particulate air] filtered exhaust systems and critical barriers to ensure no air-borne particles enter the occupied area."

Kouzma emailed the Cikalos informing them Skyline Ridge intended to perform remediation in the apartment. Roman refused access, saying "I don't want anyone in [the] apartment until the attorneys have spoken" and that he was "[n]ot sure [he] c[ould] be any more clear: no mold testing and no remediation until my attorney has been afforded the opportunity to weigh in." On May 22, 2013, Skyline Ridge filed a summary dispossession complaint in the Landlord Tenant Section, Special Civil Part alleging destruction of property.[3]

Meanwhile, Skyline Ridge hired Envirotactics, Inc., who evaluated the apartment on June 17, 2013. Its representative recommended mold remediation be conducted in the den, master bedroom and bathroom, and suggested the master bathroom be closely evaluated to determine if there was a leak. On June 26, 2013, the Cikalos retained Greg Brown, a representative of Eastern Environmental Engineering Services, Inc., to identify what caused the mold. Brown determined the presence of either a roof or condensate leak along the HVAC ducts and observed the guest bathroom wall was wet to the touch. He

---

[3] This case is docketed at No. A-5600-15 and is addressed in detail in Part IV of our opinion.

opined the source of the damp bathroom wall was either a plumbing or roof leak along the framing behind the wall. The Cikalos formally surrendered their apartment on June 28, 2013.

RSI conducted mold remediation in the apartment's guest bathroom in July 2013 and discovered a pinhole leak in the shower pipe. All porous materials from inside the apartment were bagged and disposed of offsite. Skyline Ridge rented the apartment to new tenants in August 2013.

On October 29, 2013, the Cikalos sued Skyline Ridge alleging: negligence, assault and battery, breach of contract, breach of the warranty of habitability, negligent remediation, negligent infliction of emotional distress, gross negligence, reckless conduct, property damage, medical monitoring and quality of life damages and per quod claims. In April 2014, the Cikalos still reported symptoms related to mold exposure and decided to travel to Texas to meet with Dr. William Rea, founder and director of the Environmental Health Center-Dallas. Rea met with both Cikalos and diagnosed them with: toxic effect mycotoxins, immune deregulation, autonomic nervous system dysfunction, allergic rhinosinusitis, allergic food gastroenteritis, chemical sensitivity, vasculitis, and tremors. In addition, Roman was diagnosed with toxic encephalopathy.

Skyline Ridge retained Dr. S. Michael Phillips to review the Cikalos' medical records. Phillips refuted the notion that the Cikalos' maladies were caused by living in their apartment. In his deposition, Phillips opined "just seeing mold is not tantamount to causation of clinical disease," and that "Stachybotrys . . . does not cause very much human clinical disease." However, he conceded Levy's testing revealed "an elevated amount of Aspergillus and Stachybotrys in the air in the bathroom."

Rea refused to travel to New Jersey to give a deposition. As a result, Skyline Ridge's attorneys traveled twice to Texas to conduct his deposition. On October 24, 2016, the court ordered the Cikalos to pay Skyline Ridge's attorneys' costs and travel expenses incurred in deposing Rea.

The Cikalos moved for partial summary judgment on their negligence claim and Skyline Ridge cross-moved for partial summary judgment on the negligence and intentional tort claims. On January 6, 2017, the judge granted Skyline Ridge's motion because the Cikalos were unable to prove Skyline Ridge had actual or constructive notice of the mold condition. The Cikalos' motion for reconsideration was denied on March 6, 2017.

## I.

We first address the Cikalos' appeal of the January 6, 2017 order granting partial summary judgment for Skyline Ridge and dismissing the Cikalos' negligence claim. The Cikalos argue Skyline Ridge had actual notice of the mold issue based on RSI's and Brown's reports, and Roman's conversation with Gonzales, and constructive notice based on the apartment's maintenance history. They contend Brown's report proves Skyline Ridge breached its duty of care to prevent excessive moisture from developing in and around building materials. Alternatively, the Cikalos assert they are entitled to an inference of negligence under the doctrine of res ipsa loquitur because their apartment and its systems were under Skyline Ridge's exclusive control.

When determining whether to grant summary judgment under Rule 4:46-2(c), "the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord him [or her] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535 (1995) (alteration in original) (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991)). If the evidence "'is so one-sided that one party must prevail as a matter of law,' the trial court should not

hesitate to grant summary judgment." Id. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). We review summary judgment orders de novo, utilizing the same standards applied by the trial courts. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). "When no issue of fact exists, and only a question of law remains, [we] afford[] no special deference to the legal determinations of the trial court." Ibid.

"It is well-settled that a landlord has a common law duty to exercise reasonable care to keep the premises in a reasonably safe condition to guard against foreseeable dangers arising from the use of the premises." J.H. v. R & M Tagliareni, LLC, 454 N.J. Super. 174, 181 (App. Div. 2018). "The landlord's duty arises when the harm is foreseeable and the landlord has sufficient control to prevent it." Scully v. Fitzgerald, 179 N.J. 114, 123 (2004). Our courts have recognized numerous circumstances where a landlord owes a duty of care to prevent foreseeable danger. See, e.g., id. at 126-27 (landlord must exercise reasonable care to guard against a fire risk); J.H., 454 N.J. Super. at 184-85 (landlord owed duty to safely maintain a radiator); Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 55 (App. Div. 1994) (duty to properly install and maintain a window screen).

A landlord must "maintain and repair those facilities in or out of the tenant's premises which are an integral part of the equipment under his [or her] control, such as water pipes, heating pipes and radiators, plumbing fixtures, electrical equipment and the like." Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48, 52 (App. Div. 1973). Demonstrating breach of this duty, however,

> requires not only proof of the condition which caused the injury but that the condition was known or should have been known by the landlord prior to the occurrence, so that he had an opportunity to correct it.
>
> Since his [or her] duty is not to insure the safety of tenants but only to exercise reasonable care, a landlord is liable only for injurious consequences to a tenant by reason of defects of which he [or she] has knowledge or of defects which have existed for so long a time that he [or she] had both an opportunity to discover and to remedy.
>
> This basic element of actual or constructive notice in the area of landlord liability arising out of the duty to maintain and repair rented premises is ingrained in our law as a necessary prerequisite to a finding of negligence . . . .
>
> [Id. at 52-53 (citations and quotation omitted).]

Actual notice refers to "notice given directly to, or received personally by, a party." Black's Law Dictionary 1087 (7th ed. 1999). Roman's January 2013 conversation with Gonzales, even when viewed in conjunction with Brown's opinion, was not actual notice. Brown opined "given the high moisture content

11

of the apartment due to the water leak and resulting mold condition, the relative humidity is sufficient for condensation to form and for water to run off the windows as the Cikalos reported." Although Roman's conversation with Gonzales may have provided notice of condensation, there was no nexus between the condensation and the mold condition. No report suggests condensation caused a leak or mold or that notice of condensation required an inspection for leaks or mold. Moreover, the mold condition inside of the apartment was not so open and obvious such that Skyline Ridge would have had reason to know about it.

Next, the Cikalos argue that Skyline Ridge had actual notice on April 12, 2013, when Roman provided Kouzma with a copy of Levy's report. However, the report was provided after they left the apartment and, presumably, sustained injury. When Skyline Ridge did receive the report, it immediately took steps to remedy the situation by contacting RSI, yet, Roman refused to allow access to the apartment. Thus, Skyline Ridge had no opportunity to remediate the issue before any harm occurred.

"A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory

Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). The Cikalos' apartment maintenance log, even in conjunction with Levy's or Brown's reports, is not proof Skyline Ridge was on notice of the mold issue. Neither plumbing issues nor condensation in a window would oblige Skyline Ridge to test for mold. Indeed, a review of the Cikalos' maintenance records, which show sporadic leaks or clogs that were remediated, further belies their claim.

We also reject the Cikalos' arguments the doctrine of res ipsa loquitur[4] applies for similar reasons. We agree with the trial court's conclusion that the Cikalos cannot prove the source of the leak was in Skyline Ridge's exclusive control when the mold began to form. Further, nothing in the record suggests Skyline Ridge knew or should have known about a leak or water damage prior to renting the unit to the Cikalos.

---

[4] "The doctrine of res ipsa loquitur permits an inference of negligence 'where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'" Buckelew v. Grossbard, 87 N.J. 512, 525 (1981) (quoting Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958)).

Next, the Cikalos argue regardless of notice, Skyline Ridge is still liable pursuant to Meier v. D'Ambose, 419 N.J. Super. 439 (App. Div. 2011). However, their reliance on Meier is misplaced. There, a tenant in a single-family residence complained to his landlord that the heat was not working. Id. at 443. The landlord promptly arranged for a repair of the furnace. Ibid. Approximately one year later, the tenant was killed when the home was destroyed by a fire that began in the furnace. Ibid. The condition of the furnace was in violation of the State Fire Prevention Code. Id. at 447-48. The court held the "lessor had a duty to maintain the furnace so that it was not dangerous to persons or property, and that such duty required periodic inspections to discover dangerous defects." Id. at 449. "Fulfillment of that [maintenance] duty did not require notice of a defect" because the landlord had a preexisting duty to maintain the furnace under the fire code. Id. at 450-51.

Meier does not oblige landlords to routinely inspect for mold or for leaks behind sealed walls. See Vellucci v. Allstate Ins. Co., 431 N.J. Super. 39, 44, 56 (App. Div. 2013) (where a landlord defendant did not violate a statutory or regulatory obligation, and no expert testimony was presented as to breach of a duty of care or foreseeability, the landlord was not liable for the tenant's injuries). Nor do the Cikalos direct us to a comparable housing code provision

14

imparting Skyline Ridge with a similar duty to maintain or inspect, as was the case in <u>Meier</u>. Thus, we affirm the court's January 6, 2017 order granting Skyline Ridge judgment as a matter of law.[5]

## II.

We turn next to the court's March 6, 2017 order denying the Cikalos' motion for reconsideration. We review motions for reconsideration under an abuse of discretion standard. <u>In re Belleville Educ. Assoc.</u>, 455 N.J. Super. 387, 405 (App. Div. 2018). We reverse only when the trial court's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" <u>Milne v. Goldenberg</u>, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting <u>Flagg v. Essex Cty. Prosecutor</u>, 171 N.J. 561, 571 (2002)).

The Cikalos raised several non-negligence claims not directly addressed in the motion for summary judgment, but were dismissed by the court in its written order denying the Cikalos' motion for reconsideration. The court explained it dismissed the Cikalos' non-negligence claims because "[e]ach claim requires either such notice [of the alleged defects] or a greater burden of proof that the [Cikalos] cannot establish." We agree.

---

[5] As a result, we need not address Skyline Ridge's cross-appeal.

The Cikalos' inability to prove Skyline Ridge was on notice of the mold condition doomed these other claims. Notice and an opportunity to cure are essential to prove a breach of the implied warranty of habitability. Berzito v. Gambino, 63 N.J. 460, 469 (1973). Further, no facts indicate Skyline Ridge acted with intent. Cf. Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 105 (1996); Wigginton v. Servidio, 324 N.J. Super. 114, 129 (App. Div. 1999).

The Cikalos used the motion for reconsideration to contest the court's June 3, 2016 order denying their motion to file a second amended complaint to include counts of spoliation and fraudulent concealment of evidence. They asserted Skyline Ridge destroyed evidence when it conducted mold remediation in the apartment. However, in both the June 3, 2016 and March 6, 2017 orders, the judge denied this contention because such claim was cognizable in 2013 when the mold was first discovered. We see no reason to disturb this conclusion because the Cikalos had ample opportunity to inspect any evidence in the apartment before vacating it.

We also reject the Cikalos' argument that the trial judge's written opinion denying the motion for reconsideration contained numerous material errors unsupported by the record. A motion for reconsideration is properly based on

matters "which counsel believes the court has overlooked or as to which it has erred[.]" R. 4:49-2.

> Reconsideration should only be used "for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence."
>
> [In re Belleville Educ. Ass'n, 455 N.J. Super. at 405 (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).]

After conducting our own review, we conclude the court's statements on reconsideration are accurate and supported by the record; therefore, we affirm the court's March 6, 2017 order.

### III.

We also affirm the court's October 24, 2016 order awarding counsel fees for Skyline Ridge and the expenses it incurred traveling to Texas to conduct Rea's deposition. Rule 4:14-7(b)(2) provides:

> If the expert or treating physician resides or works in New Jersey, but the deposition is taken at a place other than the witness' residence or place of business, the party taking the deposition shall pay for the witness' travel time and expenses, unless otherwise ordered by the court. If the expert or treating physician does not reside or work in New Jersey, the proponent of the witness shall either (A) produce the witness, at the

17

> proponent's expense, in the county in which the action is pending or at such other place in New Jersey upon which all parties shall agree, or (B) pay all reasonable travel and lodging expenses incurred by all parties in attending the witness' out-of-state deposition, unless otherwise ordered by the court.

We defer to decisions of the trial court in discovery matters, "unless the court has abused its discretion." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997). Here, we discern no such abuse of discretion by the judge. Considering it was necessary to depose Rea and he refused to travel to New Jersey, the court appropriately required the Cikalos to pay defense counsel's travel expenses. While the Rule and case law are silent as to whether fees for travel time should be characterized as travel expenses, Rea's lack of cooperation required defense counsel to expend a significant amount of time and effort to travel to Texas twice.

IV.

Finally, we turn to the landlord-tenant matter docketed at No. A-5600-15. Skyline Ridge filed a summary complaint for possession of the Cikalos' apartment on the grounds they willfully damaged the premises. In addition, Skyline Ridge requested $183 in legal and court filing fees pursuant to the parties' lease agreement. On June 5, 2013, the parties entered into a consent judgment, which stipulated the Cikalos would vacate the apartment and Skyline

18

Ridge would return their security deposit. Shortly thereafter, the Cikalos fired their attorney, engaged new counsel, and moved to vacate the consent judgment on the ground their previous attorney was not authorized to enter into the judgment. That motion was denied on July 10, 2013, and no appeal was taken.

Skyline Ridge's agent, Irene Bartosh, signed the verification accompanying the complaint as an "authorized officer" of the corporation. However, she was a mere employee. Bartosh certified the information contained in the complaint was true and based on her personal knowledge. But when deposed, Bartosh admitted she had no personal knowledge of the Cikalos' circumstances and that her signed verification contained misleading statements.

On May 23, 2016, the Cikalos again moved to vacate the June 2013 consent judgment and asserted, pursuant to Rule 4:50-1(f), Bartosh's false certification deprived the Landlord Tenant Section, Special Civil Part of subject matter jurisdiction. They argued Rule 6:3-4(c), which mandates summary complaints for possession due to non-payment of rent be verified, was not satisfied because Bartosh, under Rule 1:4-7, was not capable of verifying the complaint. On July 14, 2016, the court denied the Cikalos' motion because, even though Rule 4:50-2's one-year time bar does not apply to motions to vacate a

judgment under Rule 4:50-1(f), they waited an unreasonable amount of time to bring the motion. We agree and only add the following.

Rule 6:3-4(c) states "[c]omplaints in summary actions for possession of residential premises based on non-payment of rent must be verified in accordance with [Rule] 1:4-7[.]" Skyline Ridge's complaint alleged willful destruction of property and sought $183 in fees that, pursuant to the parties' lease, was considered "additional rent." See Cmty. Realty Mgmt., Inc. for Wrightstown Arms Apartments v. Harris, 155 N.J. 212, 234 (1998) (landlord may collect "additional rent" in a summary dispossess proceeding in an amount contemplated by the parties' lease). Skyline Ridge's complaint did not seek payment of rent or additional rent owed, and therefore, Skyline Ridge was not subject to Rule 6:3-4(c)'s verification requirement. See Hodges v. Sasil Corp., 189 N.J. 210, 233 (2007) (requiring summary complaints for possession based on non-payment of rent to be verified and "expressly state the amount of debt owed, the creditor's identity, and that the amount must be paid to the landlord or the clerk before 4:30 p.m. on the day of trial for the case to be dismissed[]" to comply with the Fair Debt Collection Practices Act). Thus, we affirm the court's July 14, 2016 order denying the motion to vacate the consent judgment.

We do not address the Cikalos' remaining arguments as they lack

sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION