CHARLES PATTON, PLAINTIFF-RESPONDENT, v. THE TEXAS COMPANY, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1951—Decided April 4, 1951.

Before Judges McGeehan, Jayne and Wm. J. Brennan, Jr.

Mr. *Samuel A. Larner* argued the cause for plaintiff-respondent (*Messrs. Budd & Larner,* attorneys).

Mr. *Joseph Coult* argued the cause for defendant-appellant (*Messrs. Coult & Salz,* attorneys).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. A. D.   Plaintiff was the guest on Christmas night, 1948, in the home of his daughter and son-in-law, a single-family dwelling at 156 Morris Street, Morristown, leased by them from the defendant.   As plaintiff was leaving he was hurt when in descending the concrete steps leading to the sidewalk he put his left foot down on.the sixth step from the ground and his foot "gave" and he fell.   He brought this action against the defendant landlord in the Law Division.   Defendant's motion for judgment at the close of plaintiff's proofs was denied and the defendant offered no testimony.   The jury returned a verdict in favor of the plaintiff. The defendant landlord appeals from the judgment entered thereon and challenges the denial of its motion for judgment.

The concrete steps were erected in 1938 by defendant's immediate predecessor in title.   The construction was faulty in that the width of the treads of the several steps was less than that called for by standard practice.   In the case of the sixth step the condition was worsened and the tread further narrowed where plaintiff put his foot down because the edge of the tread at that point had crumbled and broken off after the tenants took possession.

The house was one of seven houses purchased by defendant to be torn down and to be replaced with a gasoline service station; it actually was razed before the trial.   The letting was in June 1944, under an oral month to month tenancy.   The house was in a state of disrepair at the time—"poor," "it wasn't to remain there and so it wasn't repaired too much."

Defendant refused the tenant's request before the mishap to repair the sixth step.   "They told me that the Texas Company would not spend any more money on the place since they were going to tear it down."

The trial court erred in denying defendant's motion for judgment.   The plaintiff's proofs were viewed below as presenting a jury question whether the landlord retained control of the concrete steps at the time of the letting so as to be liable for failing to repair a defect of which it had knowledge or for

maintaining a nuisance. *Monohan v. Baime,* 125 *N. J. L.* 280 (*E. & A.* 1940) ; *Dubonowski v. Howard Savings Institution,* 124 *N. J. L.* 368 (*E. & A.* 1939) ; *Taylor v. Majestic B. & L. Association,* 14 *N. J. Misc.* 699 (*Sup. Ct.* 1936). The proofs, however, show clearly that the step structure was part of the premises demised. The determinative facts are revealed in the parties' own statements of the extent of the leasehold. The arrangement, as deposed by plaintiff's daughter, was that there was leased to her and her husband *"the property* owned by the Texas Company *known as* 156 *Morris Street,* Morristown, New Jersey," "the premises" at that address. A letter dated July 3, 1944, from defendant to the tenant husband acknowledged a like understanding, namely, that the demise was "of *the premises,"* "We welcome you as a tenant *at the subject address,"* "Real Estate: Morristown, N. J., 156 Morris Street."

The parties plainly contemplated the letting of the entire property, that is, the lot and house, which included the front steps. The house was leased for occupancy as a single-family dwelling. "The property," "the premises," "the subject address" all referred to "156 Morris Street" and were precisely descriptive of the entire premises in accord with common understanding when single-family houses are let. There is no uncertainty such as may appear upon the letting in such terms of a part only of a multi-family dwelling, in which case evidence of repairs by the lessor is admissible to show that the landlord retained control of an approach or stairway giving access to the apartment or flat which was let. *Dubonowski v. Howard Savings Institution, supra; Taylor v. Majestic B. & L. Association, supra;* but see *Schwartz v. Federal Deposit Insurance Corp.,* 127 *N. J. L.* 556 (*E. & A.* 1941).

■ Part of the evidence deemed by the trial judge to create a fact question as respects retained control by the lessor of the step structure was that after the letting the landlord made repairs both within and outside the house and on one occasion to the exterior of the sidewalls of the concrete step structure. There is no contention that the lessor contracted to make the repairs. They were made upon the request of the tenants, but

the landlord acknowledged no obligation to make repairs and in fact made only such as it saw fit to make and refused to make others, as in the case of the refusal of the request to repair the sixth step. Defendant was "privileged" to enter the premises to make repairs, but the proofs negative any notion of a *duty* by contract in that regard or that the landlord could enter *as a matter of right*. In that circumstance its failure to make repairs to the sixth step cannot be deemed an act of negligence contributing to plaintiff's injuries and a proximate cause thereof. *Handlon v. Copestone Temple Assn.*, 106 *N. J. L.* 362 (*E. & A.* 1929); *Connors v. Newton*, 77 *N. J. L.* 125 (*Sup. Ct.* 1908). The entire property having been demised and the concrete step structure being part of the premises let, proof of the repairs had no significance in the circumstances. See *Spinelli v. Golda*, 6 *N. J.* 68 (1950); *cf. White v. Ellison Realty Corp.*, 5 *N. J.* 228 (1950).

Nor do we perceive any room for an inference that less than the whole property was let in the proofs that defendant after the letting exchanged letters with its real estate manager in which appear "It does have to be kept reasonably safe to live in, however, and that is all we are attempting to do," and "we must maintain the property so that it is in a safe condition and that there is no possibility of a liability suit." Those statements in no wise import a demise of less than the whole premises; rather they buttress the proofs evincing the parties' understanding—"It" plainly refers to the house, "the property" to the premises generally. Whether the statements alone or in light of the other proofs imply an undertaking on the part of the landlord at the time of the letting to make repairs is a question not before us inasmuch as the case was not pleaded nor tried below nor was this appeal argued on the basis of the existence of an agreement to repair, either as a ground for the landlord's alleged liability or as bearing on the issue of retained control.

As the defect was not latent, the landlord is not liable in the circumstances of this case to the tenants' invitee for injuries suffered on the premises by reason of the defect.

Plaintiff's brief argues that the landlord is liable for maintaining a nuisance, the sub-standard tread, which existed on the premises prior to the lease. The landowner's immunity is no different whether the condition is deemed a nuisance or not. The established general rule in this State is that upon the letting of a house and lot there is no implied warranty or condition that the premises are fit and suitable for the use to which the lessee proposes to devote them and the landlord is therefore under no liability for injuries sustained by the tenant or the tenant's invitee by reason of the ruinous condition of the demised premises unless there has been fraudulent concealment of a latent defect. *LaFreda v. Woodward,* 125 *N. J. L.* 489 (*E. & A.* 1940); *Connors v. Newton, supra;* and see the helpful and frequently cited article by Laurence H. Eldredge, 84 *University of Pennsylvania Law Review* 467 (reprinted in *Eldredge, Modern Tort Problems, pp.* 113 *et seq.*); *Note,* 62 *Harvard Law Review* 669 (1949). The case is not within the recognized exception that a landlord is liable to a person injured by reason of a condition on lands leased for a so-called "public" or "semi-public" purpose and who comes on the land for the particular purpose for which the lands are leased and not as a social visitor or other business visitor of the tenant. *Martin v. Asbury Park,* 111 *N. J. L.* 364 (*E. & A.* 1933); *Johnson v. Zemel,* 109 *N. J. L.* 197 (*Sup. Ct.* 1932); *Smith v. Delaware River Amusement Co.,* 76 *N. J. L.* 461 (*Sup. Ct.* 1908); *Eckman v. Atlantic Lodge,* 68 *N. J. L.* 10 (*Sup. Ct.* 1902); *cf. LaFreda v. Woodward, supra; Trondle v. Ward,* 129 *N. J. L.* 179 (*E. & A.* 1942); *Restatement on Torts* (1938), *sec.* 359.

We may add that, even if the plaintiff had tried the case on the theory that his proofs evidenced a breach by the landlord of an agreement to make repairs, it is not yet clear in this State that a landlord who breaches such agreement with his tenant may on that ground be held liable to the tenants' invitee whose status is that of a third person not in privity of contract or leasehold estate with the landlord. *White v. Ellison Realty Corp., supra; Clyne v. Helmes,* 61 *N. J. L.* 358 (*Sup. Ct.* 1898).

Reversed.