**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0160-18T2

MARY GIRALDI,

     Plaintiff-Appellant,

v.

MICHAEL CERVINI and
SUSAN CERVINI,

     Defendants-Respondents.

_____

          Submitted September 23, 2019 - Decided October 24, 2019

          Before Judges Ostrer and Susswein.

          On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3109-16.

          Apicelli & Costanzo, attorneys for appellant (Nicholas C. Apicelli, on the brief).

          Garrett L. Joest, III, attorney for respondents.

PER CURIAM

     Plaintiff, Mary Giraldi, appeals from the trial court's order granting summary judgment to defendants, Michael and Susan Cervini, dismissing

plaintiff's personal injury lawsuit with prejudice. Plaintiff leased a single-family home from defendants in 2012. After living in the rented house for four years, she caught her foot in a gap between the boards of a tread on the front porch steps, which caused her to fall and injure herself. The trial court ruled that defendants did not owe a duty to plaintiff because defendants had done nothing to conceal the gap and plaintiff was aware of the steps' condition. We affirm the grant of summary judgment based upon the trial court's well-reasoned written opinion. Viewing the discovery record in the light most favorable to plaintiff, even assuming that the crack in the stair tread was a dangerous condition, it was not a hidden or latent defect of which plaintiff was unaware. Accordingly, as a matter of law, defendants owed no legal duty to plaintiff with respect to the condition of the steps.

I.

On August 23, 2012, plaintiff entered into a month-to-month residential rental agreement with defendants. Plaintiff testified at her deposition that there was a half-inch wide crack in one of the stair treads and that this gap was there when she moved in. Plaintiff informed defendants of a possible defect in the front porch steps shortly after renting the home. Plaintiff indicated that defendants did not perform the requested step repair while she lived in the house.

2

On August 23, 2016, at 11:30 p.m., plaintiff descended from the porch and caught her right foot in the gap in the stair tread, causing her to lose her balance and fall to the ground. On November 22, 2016, she filed a civil complaint asserting negligence and failure to warn of a hazardous condition on the rented property. In their answer to the complaint, defendants denied the allegations and raised a number of defenses, including contributory negligence, that no warranties existed, and that defendants owed no legal duty to plaintiff.

After the parties completed discovery, defendants moved for summary judgment. On August 8, 2018, the judge granted defendants' motion for summary judgment, dismissing plaintiff's complaint with prejudice.

II.

We review the grant of summary judgment de novo, viewing the evidence in the discovery record in the light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 524 (1995). Summary judgment should be granted only when the moving party is entitled to judgment as a matter of law. Id. at 529. A moving party is entitled to judgment as a matter of law when the evidence is so one-sided that it does not require submission to a jury. Id. at 529.

3

The first step in a negligence action is to determine whether the defendant owed a duty to the plaintiff. Carvalho v. Toll Bros. & Developers, 278 N.J. Super. 451, 457 (App. Div. 1995). Determining whether or not a duty exists is a question of law, and therefore must be decided by a judge and not by a jury. Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991).

At common law, a landlord was not responsible for harm caused by a dangerous condition[1] once the lessee took possession of the property. Szeles v. Vena, 321 N.J. Super. 601, 605 (App. Div. 1999) (citing Restatement (Second) of Torts § 356 (Am. Law Inst. 1965)). Over time, courts have modified that general rule so that in certain circumstances, a landlord can be liable for injuries resulting from a dangerous condition on leased premises. Ibid. (citing Restatement (Second) of Torts §§ 357-362 (Am. Law Inst. 1965)). Although the law governing the scope of duty in landlord-tenant negligence cases has

---

[1] In order to establish a duty in a failure to warn case, a plaintiff must first prove that the condition complained of is dangerous or involves an unreasonable risk of harm. See D'Alessandro v. Hartzel, 422 N.J. Super. 575, 580 (App. Div. 2011) (explaining that plaintiff failed to offer proof that the condition was dangerous or involved an unreasonable risk of harm). We need not address whether there was a material dispute of fact concerning the dangerousness of the porch steps, however, because even assuming that the half-inch wide crack constitutes a dangerous condition, "liability is still precluded if plaintiff knew or had reason to know of the risk involved." Id. at 581 (citing Reyes v. Egner, 404 N.J. Super. 433, 456 (App. Div. 2009)).

A-0160-18T2

evolved, and although it may no longer be necessary in all cases for a plaintiff to prove that the landlord actively concealed a dangerous condition, the critical inquiry that remains is whether the lessee was aware of the dangerous condition that caused injury.

Our decision in Patton v. Texas Company has long served as a benchmark for determining landlord liability in negligence actions brought by tenants. 13 N.J. Super. 42 (App. Div. 1951). The facts in Patton are very similar to the circumstances in the present case. In Patton, the plaintiff sued the defendant landlord for an injury sustained during a fall while walking down the front steps. Id. at 44. The tenant had previously asked the landlord to repair the step, but the landlord was under no contractual obligation to do so and refused. Id. at 45-46. Then-Judge William Brennan found that "[a]s the defect was not latent, the landlord is not liable in the circumstances of this case to the tenants' invitee for injuries suffered on the premises by reason of the defect." Id. at 46. The court explained the general rule:

> that upon the letting of a house and lot there is no implied warranty or condition that the premises are fit and suitable for the use to which the lessee proposes to devote them and the landlord is therefore under no liability for injuries sustained by the tenant or the tenant's invitee by reason of the ruinous condition of

the demised premises unless there has been fraudulent concealment of a latent defect.[2]

[Id. at 47.]

In Szeles, we considered whether the rule announced in Patton remained good law in view of a series of rent abatement cases that held that residential leases carry an implied warranty or covenant of habitability.[3] The plaintiff in that case had lived in the rented house for three years before injuring himself when he fell on a loose brick on an exterior staircase of the single-family residence. Szeles, 321 N.J. at 602-03. In determining the legal principles that applied, we recognized that there had been "obvious inroads" to the Patton rule, "particularly involving multi-family dwellings." Id. at 606. Despite those inroads, we applied the general rule of Patton and held that the landlord was not

---

[2] A latent defect is defined as one "not known or reasonably discoverable." Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48, 53 (App. Div. 1973). A patent defect is one that is clear and obvious. Szeles, 321 N.J. Super. at 607.

[3] See Marini v. Ireland, 56 N.J. 130, 144, 146 (1970) (concluding a residential lease includes an implied warranty or covenant of habitability, and costs incurred by tenant to repair necessaries can be deducted from tenant's rent, so long as tenant provides timely notice to landlord of the necessary repair); Berzito v. Gambino, 63 N.J. 460, 467-68 (1973) (reasoning a tenant's covenant to pay rent is separate from a landlord's covenant to maintain habitable premises, and thus in an action brought by a landlord for a tenant's failure to pay rent, a tenant can raise a defense of landlord's failure to maintain habitable premises).

A-0160-18T2

liable to the plaintiff, noting "[t]his was clearly not a concealed condition." Id. at 607.

More recently, in Reyes, the trial court granted the defendants' summary judgment motion after finding that the plaintiffs failed to prove that the lessors actively or fraudulently concealed the allegedly dangerous condition. 404 N.J. Super. at 438. On appeal, we questioned the "fraudulent concealment" requirement expressed in Patton, noting that "we hesitate to continue to impose upon plaintiffs an inflexible doctrinal requirement of proving the lessor's 'fraudulent concealment' of a dangerous condition." Id. at 459.

We concluded that this requirement was inapposite in the particular circumstances of the case. Reyes involved the rental of a summer beach house at the Jersey Shore for a two-week period straddling the Labor Day holiday. Id. at 438-39. In contrast, in Patton the plaintiff had been living in the rented premises for a few years on a month-to-month lease. 13 N.J. Super at 44. We thus distinguished Patton, concluding that a tenant of such a short-term lease likely has no interest in doing a thorough pre-occupation inspection. Reyes, 404 N.J. Super. at 456, 460. On that basis, we concluded that the discovery record, viewed in a light most favorable to the plaintiffs, raised genuine issues whether

a vacationing lessee would have reasonably noticed the dangerous condition. Id. at 461.

In the present case, in contrast to Reyes, and just as in Patton and Szeles, plaintiff lived in the rented house for years. Although we criticized, if not abrogated, the fraudulent concealment requirement, we did not suggest in Reyes that a landlord is liable to a tenant for a dangerous condition that the tenant was actually aware of. Id. at 459. To the contrary, we embraced the Second Restatement of Torts, which expressly accounts for whether the lessee knows of the condition or the risk involved. Id. at 459-60. Specifically, we explained that

> [W]e hold that the lessor's duty should be defined consistent with the precepts of Section 358 of the Second Restatement. As we have noted, that provision permits liability, even in the absence of a lessor's concealment, if the plaintiff demonstrates that the lessor has failed to disclose a condition "which involves unreasonable risk of physical harm to persons on the land" if "(a) the lessee does not know or have reason to know of the condition or risk involved, and (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."
>
> [Id. at 456 (emphasis added) (quoting Restatement (Second) of Torts § 358 (Am. Law Inst. 1965)).]

A-0160-18T2

Plaintiff also relies on Model Jury Charge 5.20C as a basis for establishing a legal duty to inform a lessee of a dangerous condition.[4] This model jury charge is unavailing to plaintiff, however, because that jury instruction clearly explains that a landlord is not liable unless the tenant is "unaware of the condition prior to the occurrence of the harm or did not realize the risk created

---

[4] The model jury charge plaintiff relies on provides in pertinent part:

**A.    Residential Premises**

When a landlord rents (leases) a home to another, he/she has a duty to inform that person of any (natural, artificial, latent — hidden) condition (or defect) that involves an unreasonable risk of bodily harm to other persons lawfully upon the premises. If he/she fails to disclose such condition, he/she is subject to liability for the harm that such condition caused, provided that:

A)    The tenant was unaware of the condition prior to the occurrence of the harm or did not realize the risk created by the condition;

B)    The condition and risk were known to the landlord or reasonably discoverable by him/her, and

C)    The landlord had reason to believe that the person to whom he/she rented the premises would not discover the condition or realize the risk created by the condition.

[Model Jury Charges (Civil), 5.20C, "Duty of Owner to Tenant Leasing Entire Premises and to Others on Premises" (approved May 1977).]

by the condition." Model Jury Charges (Civil), 5.20C, "Duty of Owner to Tenant Leasing Entire Premises and to Others on Premises" (approved May 1977).

As the trial court noted in the written opinion, plaintiff testified at her deposition that the gap existed when she moved in four years before her fall. The trial court also found, based on the photograph attached to plaintiff's expert's report, that the gap was obvious. Accordingly, even when viewing the evidence in a light most favorable to plaintiff, the record clearly establishes that plaintiff was aware of the crack.

Plaintiff nonetheless asserts that it was "impossible…to have realized the seriousness of the hole in the porch steps," and that she "could clearly not be aware of the width and seriousness of the hole between the step treads." Those contentions are nothing more than bare assertions and are simply implausible. Having used the front steps over the course of four years, plaintiff is hard pressed to argue that it was impossible for her to appreciate the seriousness of the gap, and at the same time argue that both the condition and the risk were known to the landlords or were reasonably discoverable by them, as required by the model jury charge she relies on. See also Reyes, 404 N.J. Super at 456 (quoting Section 358 the Second Restatement of Torts for the prerequisite to liability that the

"lessor knows or has reason to know of the condition, and realizes or should realize the risk involved").

## III.

In sum, reviewing the trial court's order de novo, and applying the same summary judgment standard as it did, we discern no genuine issue with respect to the duty defendants owed to plaintiff. See Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (explaining appellate courts use the same standard of review that a trial court utilizes (de novo) and do not accord special deference to the trial court rulings (citing Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995))). We conclude, as did the trial court, that plaintiff was aware of the condition of the stairs and the risk of harm posed by that condition before the accident, and therefore, defendants are entitled to judgment as a matter of law. Brill, 142 N.J. at 528-29; R. 4:46-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                                    A-0160-18T2