**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3349-19

KAREN LAFFEY and
THOMAS LAFFEY,

     Plaintiffs-Appellants,

v.

RAYMOND AUFIERO and
KIM ANNE AUFIERO,

     Defendants-Respondents.

_____

Argued October 12, 2021 – Decided December 7, 2021

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0460-19.

Douglas R. D'Antonio argued the cause for appellants (Wisniewski & Associates, LLC, attorneys; John S. Wisniewski and Jennifer M. Kurtz, on the briefs).

Paul J. Endler, Jr. argued the cause for respondents (Methfessel & Werbel, attorneys; Gerald Kaplan and David Incle, Jr., on the brief).

PER CURIAM

Plaintiffs Karen Laffey and Thomas Laffey appeal the summary judgment order by Judge Henry P. Butehorn dismissing their premises liability lawsuit against their landlords, defendants Raymond Aufiero and Kim Anne Aufiero. Plaintiffs contend defendants had a legal duty to install a handrail along four concrete steps on the side of a Belmar single-family home ("the property") leased to them. In addition, plaintiffs appeal an order granting defendants' motion to extend discovery after the initial discovery end date. For reasons that follow, we affirm both orders.

I

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citations omitted). Summary judgment should be denied when determination of material disputed facts depends primarily on credibility evaluations. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011).

A-3349-19

Mindful of these principles, we view the facts from the record in a light most favorable to plaintiffs as the non-moving party and give them the benefit of all favorable inferences. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013). Since 1997, plaintiffs have leased the property–built in 1930–from defendants through written lease agreements. Defendants purchased the property in 1984. The lease agreements delineated plaintiffs' responsibilities, such as garbage disposal and snow removal. Although not mentioned in the lease agreements, Raymond[1] conducted repairs, "[a]s necessary," such as cutting the grass weekly during summer months and asking the tenants "if they need[ed] anything." During winters, Raymond visited the property monthly to collect the rent. Each spring and fall, he switched out "the storm glass to screens on the kitchen door." Defendants resided "only . . . ten minutes away," and regularly drove by the property.

On the afternoon of February 13, 2018, Karen returned home from the grocery store. After parking in the driveway on the side of the house near the kitchen, she honked the car horn to signal to Raymond to come outside to help her with the groceries. Because it had rained earlier, the ground was wet. While

---

[1] We use the parties' first names because they share a surname and for ease of reference. In doing so, we mean no disrespect.

carrying a bag of groceries walking up the four concrete stairs leading to the kitchen, Karen opened the storm door and "put one foot on the kitchen floor" and immediately "went up in the air and out the door backwards," hitting the storm door on her way out. She "landed on the third step first, went to reach for the railing that wasn't accessible [because the storm door prevented her from grabbing it, and] bounced up in the air again." She then fell on her right shoulder, hitting her head on the ground, and landing on her back in the driveway. The "railing" is actually a metal pipe guard approximately one inch in diameter situated to the right side of the stairs and is affixed to both the first stair and the wall next to the door. Plaintiffs' expert opined that "[a]fter [Karen] slipped and lost her footing, she fell and was injured because the stair was not equipped with code complaint handrails to help her support herself or arrest her fall."

After Karen got up, she told Thomas, her husband, to take her to the hospital. The following day, a surgeon reconstructed her shoulder by performing a rotator cuff and shoulder replacement. She was later diagnosed with a herniated disk resulting from the fall. Karen contends she has permanent injuries that affect her lifestyle and keep her from continuing her primary occupation of candle-making business.

A-3349-19

Plaintiffs filed suit alleging Karen's fall was the "result of . . . defendants' carelessness, recklessness, and/or negligence in their ownership, care, maintenance, repair, inspection supervision, and/or construction of the [p]roperty, house, doorway and/or door steps." Karen sought damages for permanent injuries, medical expenses, pain and suffering, and an inability to perform her customary activities. Thomas made a per quod claim for loss of "companionship, society, guidance, material services[,] and consortium of his wife."

After discovery concluded,[2] defendants moved for summary judgment dismissal of plaintiffs' complaint. Judge Butehorn entered an order granting the motion. In a written statement of reasons, he explained:

> There is no statutory duty identified nor claimed applicable to . . . defendant landlord[s] in this case. Rather, it has consistently been held since Patton [v. Texas Co., 13 N.J. Super. 42, 47 (App. Div. 1951)] . . . as well as in . . . New Jersey case law since the adoption of the [Restatement (Second) of Torts (Am. Law Inst. 1965)] . . . that a lessor does not have a duty to warn the lessee about, nor otherwise modify, a condition on the leased property that is patent[,] and the tenant readily acknowledges their knowledge about. The same is true even if the claimed condition is not in compliance with a mandated building code. See Reyes v. Egner, 404 N.J. Super. 433 (App. Div. 2009). In this case, as the

---

[2] The discovery issue on appeal will be discussed later.

claimed dangerous condition was not latent and was known to [Karen] for many years[,] the court cannot find defendants had any duty to either warn [her] about the condition or otherwise modify it. The lack of that duty necessarily prevents a finding of a jury that defendants breached a duty proximately causing plaintiff's claimed injuries. . . . The court need not address whether the pipe constituted a railing in compliance with the building codes as a pre-existing condition, or "grandfathered."[3]

II

Plaintiffs argue on appeal that the judge misapplied the law in granting summary judgment to defendants, "employ[ing] a very narrow and archaic view of landlord premises liability, applying Patton . . . and misapplying the Restatement (Second) of Torts § 358 [(Am. Law Inst. 1965)]." They contend the judge should have applied "the modern, fact-sensitive approach" delineated in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993), which would have established defendants breached a duty of care owed to them, thereby preventing summary judgment dismissal of their suit. We disagree and affirm substantially

---

[3] Although we recognize the court did not intend to do so, we decline to utilize this term because of its prejudiced origins. See Webster's Third New International Dictionary 987 (2002) (definition of "grandfather clause"); Benno C. Schmidt, Jr., Principle and Prejudice: The Supreme Court and Race in the Progressive Era, 82 Colum. L. Rev. 835 (1982).

6

for the reasons set forth by Judge Butehorn in his thoughtful statement of reasons. We add the following comments.

The pivotal issue in this case is whether defendants owed a duty to plaintiffs, cognizable in a tort action, to install handrails on the stairs leading to the house on the property leased by plaintiffs. "The question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a question of fairness or policy." Chen Lin Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991) (citing Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988)). Premises liability law has evolved since Patton to the point where courts now define a landowner's duty consistent with the public policy principles articulated by our Supreme Court in Hopkins, 132 N.J. 426 (1993), and with the precepts of Restatement (Second) of Torts § 358 (Am. Law Inst. 1965). Meier v. D'Ambose, 419 N.J. Super. 439, 445-47 (App. Div. 2011). While at common law the general rule was that a landlord was not liable to his lessee for physical harm caused by a dangerous condition existing on the land when the lessee took possession, "[o]ver time, the general rule was modified to make a landlord liable in certain circumstances for injuries resulting from dangerous conditions on leased premises." Szeles v. Vena, 321 N.J. Super 601, 605 (App Div. 1999); Restatement (Second) of Torts §§ 356, 357-362 (Am. Law Inst. 1965). These

7

sections of the Restatement set forth exceptions to the general rule, namely Section 357, where the lessor contracts to repair; Section 358, where the lessor knows of a dangerous condition on the property but fails to disclose it to the lessee; and Section 362, where the lessor has been negligent in making repairs. These, however, do not apply here.

In deciding whether defendants owed plaintiffs a duty, the judge relied, in part, upon this court's opinion in Patton, which has long served as a benchmark for determining landlord liability in negligence actions brought by tenants. The facts in Patton are very similar to those in this case. There, the plaintiff sued the defendant landlord for an injury sustained during a fall while walking down the front steps. Patton, 13 N.J. Super. at 44. The tenant had previously asked the landlord to repair the steps, but the landlord was under no contractual obligation to do so and refused. Id. at 45-46. For the court, then Judge William J. Brennan, Jr. wrote that "[a]s the defect was not latent, the landlord is not liable in the circumstances of this case to the tenants' invitee for injuries suffered on the premises by reason of the defect." Id. at 46. The general rule is

> that upon the letting of a house and lot there is no implied warranty or condition that the premises are fit and suitable for the use to which the lessee proposes to devote them and the landlord is therefore under no liability for injuries sustained by the tenant or the tenant's invitee by reason of the ruinous condition of

8

the demised premises unless there has been fraudulent concealment of a latent defect.

[Id. at 47.]

Almost fifty years later, in Szeles, we considered whether the rule announced in Patton remained good law in view of a series of rent abatement cases, which held that residential leases carry an implied warranty or covenant of habitability. 321 N.J. Super at 605. The plaintiff in that case had lived in the rented house for three years before injuring himself when he fell on a loose brick on an exterior staircase of the single-family residence. Id. at 602-03. In determining the legal principles that applied, we recognized that there had been "obvious inroads" to the Patton rule, "particularly involving multi-family dwellings." Id. at 606. Despite those inroads, we applied Patton's general rule and held the landlord was not liable to the plaintiff because "[t]his was clearly not a concealed condition." Id. at 607.

More recently, in Reyes, the trial court granted the defendants' summary judgment motion after finding the plaintiffs failed to prove the lessors actively or fraudulently concealed the allegedly dangerous condition. 404 N.J. Super. at 438. On appeal, we questioned the "fraudulent concealment" requirement expressed in Patton, noting that "we hesitate to continue to impose upon [the] plaintiffs an inflexible doctrinal requirement of proving the lessor's 'fraudulent

9

concealment' of a dangerous condition." Id. at 459. Nevertheless, we concluded this requirement was inapposite in the circumstances of the case. The plaintiff rented a summer beach house at the Jersey Shore for two weeks. Id. at 438-39. In contrast, the tenants in Patton had been living in the rented premises for a few years on a month-to-month lease. 13 N.J. Super at 44. We thus distinguished Patton, concluding that a tenant of such a short-term lease likely has no interest in doing a thorough pre-occupation inspection. Reyes, 404 N.J. Super. at 455-56, 460. Hence, we concluded that the record, viewed in a light most favorable to the plaintiffs, raised genuine issues of fact as to whether a vacationing lessee would have reasonably noticed the dangerous condition. Id. at 461.

Here, in contrast to Reyes, but like Patton and Szeles, plaintiffs lived in the property for many years—about twenty-one. Although we criticized, if not abrogated, the fraudulent concealment requirement, we did not suggest in Reyes that a landlord is liable to a tenant for a dangerous condition of which the tenant had actual knowledge. Id. at 459. To the contrary, we embraced the Second Restatement of Torts, which expressly accounts for whether the lessee knows of the condition or the risk involved. Id. at 459-60. Specifically,

> we h[e]ld that the lessors' duty should be defined consistent with the precepts of Section 358 of the Second Restatement. As we have noted, that provision permits liability, even in the absence of a lessor's

concealment, if the plaintiff demonstrates that the lessor has failed to disclose a condition "which involves unreasonable risk of physical harm to persons on the land" if "(a) the lessee does not know or have reason to know of the condition or risk involved, and (b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk."

[Id. at 456 (quoting Restatement (Second) of Torts § 358 (Am. Law Inst. 1965)).]

As Judge Butehorn noted, plaintiffs had lived in the property for many years, and Karen was well-aware of the lack of a handrail before her fall. Accordingly, even when viewing the evidence in a light most favorable to plaintiffs, the record clearly establishes that plaintiffs were aware of the lack of a handrail.

Plaintiffs, through their liability expert, contend defendants violated their duty to install a handrail as imposed by New Jersey Uniform Fire Code (UFC), N.J.A.C. 5:70-1.1 to -4.20 and the Borough of Belmar's Property Maintenance Code. The UFC, states, in relevant part,

Every required exit stairway having three or more risers and not provided with handrails or in which the existing handrails are judged to be in danger of collapsing when used under emergency exiting conditions, shall be provided with handrails for the full length of the run of steps on at least one side. . . . Where there are no handrails or where the existing handrails must be

11

replaced in order to correct a hazardous condition, the handrails shall be designed and installed in accordance with the provisions of the New Jersey Uniform Construction Code.

[N.J.A.C. 5:70-4.11(m).]

The municipal code,[4] provides that

[e]very exterior and interior flight of stairs having more than four risers shall have a handrail on at least one side of the stairs, and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches above the floor or grade below shall have guards[.]

Thus, plaintiffs' expert opined that defendants' failure to install handrails "deprived [Karen] of the safety equipment she could have used to prevent or arrest her fall and created the dangerous condition that was a cause of her fall and resulting injuries."

These contentions are unpersuasive. In <u>Reyes</u>, we upheld summary judgment concerning the absence of a handrail even though the handrail was apparently mandated by the building code. We sustained the dismissal of the handrail claim because the tenant had admitted that she was aware before the accident that the deck did not have a handrail. <u>Reyes</u>, 404 N. J. Super at 462.

---

[4] The Borough of Belmar's Property Management Code adopts the BOCA National Property Management Code of 1996.

The tenant's awareness of that dangerous condition precluded recovery under Section 358, which only imposes liability for conditions that are not known, or reasonably discoverable, by the tenant. See Restatement (Second) at § 358(1)(a) and (b). As noted, Karen was well-aware of the lack of a handrail. Moreover, the property was built in 1930 and there was no proof in the record that there was a violation of any state or municipal code.

In sum, for reasons consistent with the applicable legal principles noted above, summary judgment was appropriately granted in defendants' favor. Although we appreciate the severity of Karen's injuries, defendants were not obligated to protect her from falling on stairs that she clearly knew had no handrail to protect her from harm when she lost her balance while ascending them.

### III

Considering that we affirm Judge Butehorn's summary judgment order dismissing plaintiffs' suit and that his decision was not based upon the defendants' liability expert report, we need not address plaintiffs' contention that Judge Joseph P. Quinn abused his discretion in granting defendants' motion to extend discovery beyond the discovery end date to allow service of their liability

expert report. Nonetheless, for the sake of completeness, we briefly address their contention.

Our court applies "'an abuse of discretion standard to decisions made by [the] trial courts relating to matters of discovery.'" C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)). We assess the judge's interpretation of applicable law de novo. Barlyn v. Dow, 436 N.J. Super. 161, 170 (App. Div. 2014).

To satisfy the exceptional circumstances standard permitting extension of a discovery end date after discovery has elapsed, a party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's

failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.

[Rivers, 378 N.J. Super. at 79; see also R. 4:24-1(c).]

In deciding defendant's motion, Judge Quinn considered the following facts. On December 20, 2019, nine days after the December 11 discovery deadline, defendants filed a motion to extend discovery to provide their liability expert report. In support, defendants' counsel certified that upon receiving plaintiffs' liability expert report on October 16—a day after expert reports were due—he forwarded the report to his liability expert to review and issue a report. There was no prior request to extend discovery before the discovery end date because all other necessary discovery, including depositions and medical examinations, were completed within the discovery period. It was not until defendants' liability expert informed counsel he was unable to provide his report before the December 11 deadline because of his "busy schedule" that there was need to extend discovery. Defendants' expert report—refuting plaintiffs' liability expert opinion that defendants were negligent in failing to provide a handrail on the property—was submitted to plaintiffs three days before the motion's return date and the entry of the order granting the motion on January

10, 2020. Given these facts, we discern no reason to determine the judge's order to extend discovery after the discovery end date based on exceptional circumstances was an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3349-19