**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3748-22

NOHEMY VARGAS,

     Plaintiff-Appellant,

v.

DELIA OROSCO, and
RAMON OROSCO,

     Defendant-Respondents.

_____

Submitted May 30, 2024 – Decided August 8, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L- 1276-22.

Anthony Scordo III, PC, attorney for appellant (Anthony Scordo III, of counsel and on the briefs).

Methfessel & Werbel, attorneys for respondents (Gerald Kaplan, of counsel and on the brief).

PER CURIAM

Plaintiff Nohemy Vargas appeals a July 31, 2023 Law Division order granting summary judgment in favor of defendants Delia Orosco and Ramon Orosco, dismissing plaintiff's complaint with prejudice. Plaintiff was a tenant on the third floor of defendants' home for two-and-a-half months when she fell while descending the rear staircase leading to her apartment. She alleges she fell when the front lip of the stair she was stepping on collapsed. She suffered injuries to her right shoulder and lower back.

In an oral opinion, the trial court found the cause of plaintiff's fall was a latent defect unknown to the parties. The court noted there was no evidence in the record to establish or infer how long the defect existed. Thus, no liability could be attributed to defendants. However, the trial court made no findings concerning whether the staircase was a common area, in which event defendants' duty to inspect would be different than if the fall occurred within space leased to plaintiff and under her exclusive control. It is unclear from the record whether other tenants lived on the floors below plaintiff, or if anyone other than plaintiff used the rear staircase. We therefore deem it necessary to remand for the trial court to make findings on whether the rear staircase is a common area of the house. In all other respects, we agree with the trial court's ruling.

I.

A-3748-22

We discern the following pertinent facts and procedural history from the record. Plaintiff leased an apartment in the third-floor attic of defendants' property. She could access her apartment through the front door and interior staircase, or the rear door and exterior staircase.

At approximately 1:00 a.m. on May 31, 2020, plaintiff fell while going down the rear staircase to meet her cousin outside. She indicated there were about twelve to fourteen steps between each floor. After plaintiff went down five or six steps from the third-floor landing, "[t]he front lip of the stair broke off causing [her] to fall, hit [her] back, [and] start sliding down."

Plaintiff testified she never noticed any problem with the stairs before this incident. To her knowledge, nothing was wrong with the stairs before her accident. She also testified she never complained to her landlord about any problems with the stairs.

Plaintiff notified her landlord's stepdaughter about the accident the next morning. She went to the hospital the following day.

On May 23, 2022, plaintiff filed a personal injury complaint in Superior Court. On July 7, 2022, defendants filed an answer and jury demand.

On May 4, 2023, defendants filed a motion for summary judgment. On June 19, 2023, the trial court heard oral argument on the motion. On July 31,

A-3748-22

2023, the court rendered an oral decision on the record accompanied by a written order dismissing plaintiff's complaint with prejudice.

Citing Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48 (App. Div. 1973) and Szeles v. Vena, 321 N.J. Super. 601 (App. Div. 1999), the trial court concluded:

> [T]he cause of plaintiff[']s fall was a latent defect unknown to both the tenant and the landlord. There is no evidence in the record to establish or even infer how long the defect existed. From the record, it cannot even be said that the landlord should have known about this condition prior to the occurrence.

This appeal follows. Plaintiff contends defendants "had constructive notice of a dangerous condition for failing to inspect, discover and remedy a defect existing on a common staircase." She also contends the circumstances of the accident bespeak negligence and that expert testimony is unnecessary because the doctrine of res ipsa loquitor applies. In her reply brief, plaintiff further argues that "both the nature of the tenancy and circumstances of the accident are sufficient to establish a prima facie case of negligence overcoming summary judgment."

II.

We preface our analysis by acknowledging the general principles governing this appeal. We adhere to familiar standards for summary judgment

4

motions. A trial court must view the motion record in a light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-1 to -6. On appeal we apply the same perspective. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 124-25 (2023). We review a grant of summary judgment de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Turning to substantive legal principles, "[t]o establish a prima facie case of negligence, a plaintiff must establish the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages." D'Alessandro v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011). This appeal focuses on the first two elements.

As we have noted, in its oral decision, the trial court relied on Dwyer and Szeles, which both involved incidents that occurred within the confines of the leased premises or within the plaintiffs' exclusive control.

In Dwyer, the plaintiff was a tenant in an apartment building owned by the defendant. 123 N.J. Super. at 51. The plaintiff lived there for fifteen years. Ibid. One day "she was in the bathtub of her apartment, and as she turned on the hot water faucet the entire 'fixture came out of the tile,' as a result of which scalding water gushed out of the pipe causing burns to various parts of her

A-3748-22

body." Ibid. We described the condition of the fixture as "a latent defect unknown to the tenant, unknown to the landlord and not discernible on reasonable inspection." Ibid.

We explained:

> The proofs at trial establish beyond dispute that the defect was a latent one not known or reasonably discoverable by the defendant. Hence, under existing legal principles the landlord cannot be held liable for the unfortunate occurrence. The mere happening of the event resulting from a latent defect followed by injurious consequences is not sufficient in itself to impose liability unless the foregoing concepts of the law of negligence have been rendered obsolete by the current advances in the law dealing with the landlord-tenant relationship.
>
> [Id. at 53.]

We added that "[t]o apply the broad brush of strict liability to the landlord-tenant relationship in a dwelling house would impose an unusual and unjust burden on property owners." Id. at 56 (emphasis added).

In Szeles, the plaintiff entered into an oral month-to-month lease for a single-family home. 321 N.J. Super. at 602. The plaintiff had exclusive control of the premises. Ibid. He fell on an exterior staircase when a brick came loose. Ibid. The plaintiff filed suit, alleging the landlord "breached the duties of care and implied warranty of habitability." Ibid. The plaintiff acknowledged he

6

never noticed the loose brick or contacted the landlord about any repairs to the steps before the fall. Id. at 603-04. He "claim[ed] that constructive notice should apply because of a claimed continuing duty of the landlord to inspect the premises." Id. at 604.

In Szeles, the trial judge granted the defendant's summary judgement motion, ruling:

> [E]ven if Patton[v. Texas Co., 13 N.J. Super. 42 (App. Div. 1951)[1]] has been expanded to require some duty to repair, the duty is not triggerable until notice of the condition has been given by the tenant to the landlord, [a]nd here, there has been no prior notice given by [the

---

[1] In Patton, the plaintiff sued the defendant landlord for an injury sustained during a fall while walking down the front steps. 13 N.J. Super. at 44. The tenant had previously asked the landlord to repair the step, but the landlord had no contractual obligation to do so and refused. Id. at 44-45. The court found that "[a]s the defect was not latent, the landlord is not liable in the circumstances of this case to the tenants' invitee for injuries suffered on the premises by reason of the defect." Id. at 46. The court explained the general rule:

> that upon the letting of a house and lot there is no implied warranty or condition that the premises are fit and suitable for the use to which the lessee proposes to devote them and the landlord is therefore under no liability for injuries sustained by the tenant or the tenant's invitee by reason of the ruinous condition of the demised premises unless there has been fraudulent concealment of a latent defect.
>
> [Id. at 47 (citation omitted).]

7

tenant] to the landlord regarding the condition that ultimately led to his injury.

> [Id. at 605.]

The judge was satisfied there was no duty owed by the landlord, "and if there was a duty, it only became operative upon notice, and there was none here." Ibid.

On appeal we affirmed, noting that:

> [I]t seems fairly obvious, despite plaintiff's attempt to characterize the claimed defect in the step as latent, that any defect involving these steps and their condition was patent. According to information available at the time of the motion, the appearance of the steps and condition of the bricks and the mortar in between them was obvious. There were references to cracks and moss growing between the bricks. This was clearly not a concealed condition. It was also not a condition that had been brought to the attention of the landlord or for which the landlord should be charged with notice this long after the lease inception date. There is also no indication in the record of when the brick on the step came loose, and whether it came loose because of the elements, wear or tear, or the action of some third party.

> [Szeles, 321 N.J. Super. at 607-08.]

We held "that where plaintiff was in exclusive possession of the premises and the condition of the brick step was not a condition that was known to the landlord at the inception of the lease, or brought to the landlord's attention, there is no basis to impose tort liability on the landlord." Id. at 608 (emphasis added).

8

We thus concluded, "[i]n view of the absence of any showing in the record of actual or constructive notice of any alleged dangerous condition in 1992 with regard to the steps, summary judgment was appropriate." Ibid.

Importantly for purposes of this appeal, our jurisprudence governing a landlord's duty to inspect distinguishes between places that are within the exclusive control of the tenant and common areas and shared facilities. That distinction was made clear by our Supreme Court in Coleman v. Steinberg, 54 N.J. 58 (1969). In Coleman, the defendant landlords owned a two-family house, "both floors of which were rented." Id. at 60. The first-floor tenants' baby came into contact with a heating pipe and suffered second and third degree burns on his leg. Id. at 61-62. The pipe was not covered with anything to protect it. Id. at 61.

Our Supreme Court explained:

> [W]here the dwelling contains two or more apartments which are rented to separate tenants, and the landlord reserves certain portions thereof or provides certain facilities for the common use or benefit of all the tenants, possession and control of such portions or facilities remain in him and do not pass to the tenants. In such situations the law imposes upon the landlord the duty of maintaining them in a reasonably safe condition for the use and enjoyment of the tenants. If he fails to do so and such failure results in injury to the tenant or persons on the premises as members of his family or his

invitees, express or implied, ordinarily the landlord is liable for the injury.

[Id. at 63.]

The Court added, "since the landlords supplied heat to both tenants of the premises through a single-control heating unit, they must be deemed to have retained control of the entire system." Ibid. Accordingly, the Court ruled, "the landlords were under a duty to use reasonable care to guard against hazards to members of the tenants' family, such as the infant plaintiff, arising out of the maintenance and operation of the system." Ibid. The Court ultimately concluded "the jury could reasonably have found that a dangerous condition existed in the heating system, and that the defendants had failed to exercise reasonable care to guard against that clearly foreseeable kind of injury." Id. at 64.

The duty landlords owe to tenants with respect to common areas is further explained in Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100 (2005). In Gonzalez, the plaintiff was shot in the common area of an apartment complex. Id. at 106. Our Supreme Court held, "the landlord . . . had the responsibility to render those areas reasonably safe for the use of both tenants and their guests." Id. at 121. The Court reasoned, "[i]n the common areas of an apartment complex, tenants and their social guests are deemed to be business visitors of

the landlord." Ibid. Accordingly, "the landlord owes a duty 'to conduct a reasonable inspection to discover latent dangerous conditions' as well as 'to guard against any dangerous conditions . . . that the owner either knows about or should have discovered.'" Ibid. (quoting Parks v. Rogers, 176 N.J. 491, 497-98 n. 3 (2003)) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993)).

III.

In the present matter, the trial court rejected plaintiff's contention the landlord had a duty to inspect the rear staircase, reasoning:

> [N]obody ever had a problem with the stairway as far as we can see in the motion record. There was no indication that there was any kind of a problem whatsoever. In fact, the plaintiff had used the stairway numerous times, never had a problem, [and] didn't notice any problem. What kind of inspection would have been necessary here for the landlord to perform when nobody is even reporting . . . it was all rotted and there were all other kinds of problems.

The trial court's reasoning is sound if the rear staircase is within plaintiff's exclusive control. However, the trial court did not make any determination as to whether the rear staircase was a common area. In Szeles, there was a specific determination that the plaintiff had exclusive control of the premises. 321 N.J. Super. at 601. In the matter before us, there was no such fact-sensitive

11

determination. As we have noted, the record does not establish whether other tenants lived in the building or if anyone other than plaintiff used the portion of rear staircase where she fell.

Accordingly, we remand for the trial court to determine whether the rear staircase is a common area, applying the summary judgment standard of viewing the record in a light most favorable to the party opposing summary judgment. Brill, 142 N.J. at 528-29. If the trial court determines the incident occurred in a common area, it shall anew the summary judgment motion in light of that finding and the governing legal principles. We do not retain jurisdiction.

IV.

Although we remand for further findings, we proceed to address plaintiff's remaining contentions. Plaintiff argues "[t]he accident circumstances bespoke negligence of landlords and expert testimony was unnecessary to create an inference of negligence pursuant to [the] doctrine of res ipsa loquitor." We disagree.

"Ordinarily, negligence is . . . 'a fact which must be proved and which will never be presumed, . . . . [but] [t]he doctrine of res ipsa loquitur, where applicable, is a method of circumstantially proving the existence of negligence." Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 95 (1999) (quoting Meny v.

12

Carlson, 6 N.J. 82, 91 (1950)).  "Res ipsa loquitur is not a theory of liability; rather it is an evidentiary rule that governs the adequacy of evidence in some negligence cases."  Ibid.  It allows a finder of fact to infer the defendant's lack of due care only when the three elements of the doctrine have been satisfied: "'(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'"  Ibid. (quoting Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958)).

Further, the law is well-settled that "'a plaintiff is not entitled to bring his case to a jury under res ipsa loquitur any time there is an unexplained accident for which a defendant might plausibly be responsible.'"  Gore v. Otis Elevator Co., 335 N.J. Super. 296, 303 (App. Div. 2000) (quoting Jimenez v. GNOC Corp., 286 N.J. Super. 533, 545 (App. Div. 1996)).  "Rather, 'a plaintiff has the burden of producing evidence that reduces the likelihood of other causes so "that the greater probability [of fault] lies at defendant's door."'"  Ibid.  (quoting Jimenez, 286 N.J. Super. at 545) (quoting Eaton v. Eaton, 119 N.J. 628, 640 (1990)).

Defendants maintain that "[a] plaintiff relying on res ipsa loquitur must still produce expert testimony that would guide the jury in determining whether the incident occurred as a result of defendant's negligence."

As to plaintiff's res ipsa loquitur argument, the trial court noted:

> This lack of an expert is critical as to invoking the [d]octrine of [r]es [i]psa. Now, as the Appellate Division noted in [Gore, 335 N.J. Super. at 302-303], [r]es [i]psa [l]oquitur is inapplicable where the injured party fails to exclude other possible causes of the injury.
>
> While the plaintiff need not reduce altogether the possibility of other causes, he must bring forth affirmative evidence that tends to exclude other possible causes of the injury. Clearly then a plaintiff is not entitled to bring his case to a jury under [r]es [i]psa [l]oquitur anytime there is an unexplained accident for which a defendant might plausibly be responsible.
>
> "Rather, a plaintiff has the burden of producing evidence that reduces the likelihood of other causes so that the greater probability of fault lies at defendant[']s door." [Id. at 303.] Now, without an expert or even with an expert whose testimony constitutes a net opinion, the plaintiff has not excluded possible causes of the alleged incident and thus cannot take advantage of [r]es [i]psa [l]oquitur.

We agree with the trial court's reasoning. To the extent we have not specifically addressed them, any remaining contentions raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

14

We remand for the trial court to make additional findings of fact and law pursuant to section III of this opinion.

We do not retain jurisdiction. Affirmed in part and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15